### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL SEIBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| PRECISION CONTRACTING | ) | |
| SOLUTIONS, LP | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| DERRICK S. SIEBER | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| STEPHEN SIEBER, a/k/a | ) | |
| "STEVIE MARCO", | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The plaintiff, Michael Seibert ("Mr. Seibert"), by counsel, sets forth the following as his complaint:

## Parties

1.     Mr. Seibert is a natural person and a citizen of the District of Columbia.

2.     Defendant Precision Contracting Solutions, LP ("PCS") is a limited partnership organized and existing under the laws of the District of Columbia. PCS's principal place of business is located at 930 Wayne Avenue, Suite 504, Silver Spring, Maryland 20910. PCS's sole general partner is Derrick S. Sieber ("Derrick Sieber") who, upon information and belief, is a citizen of the State of Maryland. Upon information and belief, Derrick Sieber is the sole limited partner of PCS.

3.     Defendant Stephen Sieber is, upon information and belief, a citizen of the State of Maryland.

## Jurisdiction and Venue

3.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, in that Mr. Seibert, on one hand, and PCS, Derrick Sieber, and Stephen Sieber, on the other, are citizens of different states and the amount in controversy exceeds $75,000.

4.     PCS is subject to personal jurisdiction in this case pursuant to D.C. Code § 13-423(a)(1), in that the cause of action set forth herein arises out of PCS's substantial transaction of business in the District of Columbia.

5.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to the claims set forth herein occurred in the District of Columbia.

## Facts

6.     On or about December 8, 2017, PCS and Mr. Seibert entered into an agreement (the "Agreement") whereby PCS was to perform certain design, construction and remodeling services on Mr. Seibert's home in the District of Columbia. A copy of the Agreement is attached hereto as *Exhibit 1*. The Agreement was modified by email dated January 15, 2018 (the "Modification"). A copy of the Modification is attached hereto as *Exhibit 2*.

7.     In negotiating the Agreement and the scope of work with PCS, Mr. Seibert dealt with an individual named Stevie Marco, who acted for PCS and who

held himself out as PCS's professional designer. Mr. Seibert now knows that Stevie Marco is not that individual's real name. In fact, Stevie Marco is a pseudonym for Stephen Sieber, who is, upon information and belief, Mr. Sieber's father.

8.    Upon information and belief Stephen Sieber has been adjudicated to have committed fraud and dishonesty in the past.  Moreover, Stephen Sieber's former construction business has a history of customer complaints and litigiousness. Had Mr. Seibert been aware of Stephen Sieber's true identity, he would not have entered into the Agreement with PCS or any entity associated with Stephen Sieber.

9.    Pursuant to the Modification, all work on Mr. Seibert's home was to be completed by February 1, 2018.

10.    PCS materially breached the Contract by failing to complete all required work by February 1, 2018.

11.    In addition, the work that was performed was defective and rife with shoddy workmanship, in breach of the Agreement and Modification, including the following:

a.    The hot water from the kitchen and bathroom sink/shower is extremely cloudy.

b.    The new deck door has multiple air leaks and the exterior part of the door was painted with interior paint. This door was not properly sealed.

c.    The air conditioning drain pipe from the furnace to the drain is severed and a portion of it no longer exists.

d.    Paint that was applied in the interior of the residence was not sanded before applying paint, the paint was not applied evenly and was not properly finished.

e.    Granite in front of fireplace does not reach the wood floor.

f.    Cabinets in the kitchen do not reach to the existing wood floor.

g.    The kitchen tile was not installed evenly.

h.    There is an uneven gap between the kitchen cabinetry and ceiling.

i.    The kitchen wall to the right of the backsplash is damaged.

j.    A door-stop to be removed from the kitchen wall has not been removed.

k.    The newly constructed hall closet had to be torn out to reach the furnace entrance and must be rebuilt.

l.    The wall next to the hot water heater is damaged.

m.    Wood paneling in the bathroom was damaged but installed.

n.    The granite installed is rough to the touch, is very dull and not what was represented by Stephen Siebert as being a "high end" finish.

o.    New electrical outlet covers for 3 outlets have not been installed.

p.    The laundry closet is not completely repaired and prepared for appliance installation.

q.    The furnace ceiling vent covers in the kitchen and bathroom have not been installed.

r.    There is damage to the bathroom wall, where wall lights were installed.

s.    What was represented by Stephen Sieber as a "stunning" under-cabinet (kitchen) light system was in fact a roll of inexpensive tape lights that cost approximately $40 at Home Depot.

-4-

t.    The baseboard in the kitchen has not been installed.

u.    The garbage disposal in the kitchen has not been connected to power.

v.    One kitchen cabinet still requires a handle.

w.    The drain handle on the bathroom sink does not work.

x.    The deck has not been sanded to remove rust and repainted black.

y.    The screen over the deck security door has not been installed.

z.    The two-level granite shelf matching other granite in the kitchen has not been constructed.

aa.    The new electric box door has not been ordered and installed.

bb.    The designer bedroom window shades have not been ordered and installed.

cc.    The closet door to the washer and dryer has not been installed.

dd.    The left drawer of the kitchen cabinet falls off the track when opening and closing.

ee.    The bathroom flooring tile was laid incorrectly and is uneven, buckling and shifts in certain areas.

ff.    The plumbing to connect the refrigerator's automatic ice maker was removed and is missing.

gg.    The newly installed kitchen sink clogs frequently due to the garbage disposal not working.

12.    In addition, project management by PCS was disorganized, disjointed, and void of responsible and professional oversight of slow and shoddy workmanship being performed by PCS's laborers, workers and subcontractors.

13.    An inspection report, prepared by The Pearce Group, identifying and documenting PCS's shoddy, defective and incomplete workmanship is attached hereto as *Exhibit 3*.

14.    The electrical and plumbing work associated with the project was required to be performed by a licensed plumber and electrician. Upon information and belief, PCS used unlicensed subcontractors or employees to perform the plumbing and electrical work.

15.    The electrical and plumbing work associated with the project required permits issued by the District of Columbia Department of Consumer and Regulatory Affairs. PCS did not obtain such required permits in violation of DC law.

16.    In addition, Mr. Seibert canceled an appliance order, for which he paid PCS. Despite PCS's promise to refund the sum of $3,921.90, but has since failed and refused to do so.

## COUNT I
### (Declaratory Judgment)

17.    The allegations in paragraphs 1 through 16 are incorporated herein as if fully set forth.

18.    The Agreement contains the following provision:

> The parties to this contract agree that any and all disputes that cannot be settled in good faith by the parties shall be resolved through binding arbitration that is initiated under the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") within 30 days of such dispute. No legal action may be initiated before the AAA or in any other arbitral or judicial forum against any

director, officer, partner, employee or agent of, or anyone else associated with, one of the principals to this contract in connection with any dispute related to this contract. The party's sole recourse under this contract shall be against each other before the AAA. If the parties do not file a claim within the 30-day period stated herein, then all claims are barred from being brought by the parties in any and all legal forums. It is further agreed that the cost of binding arbitration shall be shared equally by PCS and the Client. It shall be clearly understood that any disputes that may arise are confidential with no public comment permitted in any form by either party relating to the dispute. The results of any Arbitration proceeding shall also be confidential with no public comment by either party permitted in any form relating to any award.  The parties agree that any breach of this provision shall constitute a willful breach of contract.

19.    The Agreement was procured by fraud, as set forth in ¶¶ 7 and 8, above, thereby making the foregoing clause unenforceable.

20.    In addition, the purported 30-day limitations period for filing a claim against PCS is facially unreasonable, unenforceable, unconscionable, and void as against public policy. This clause also is unenforceable because it has the practical effect of barring any action by Mr. Seibert under the Agreement, thereby destroying mutuality of obligation.

21.    Further, the bar against bringing actions against PCS's partners likewise has the effect of barring any action by Mr. Seibert, and thereby destroying mutuality, because (a) a general partner of a limited partnership is a necessary party to an action against the partnership, and (b) it insulates perpetrators of fraud and negligence against liability, in violation of public policy.

22.    The bar against public comment, and the entire provision quoted in ¶ 18, above, are likewise unconscionable and unenforceable as a matter of law, pursuant to 15 U.S.C. § 45b.

23.    PCS uses the provision quoted in ¶ 18 to perpetrate fraud and to deceive consumers, including Mr. Seibert. By employing an arbitration clause, coupled with the confidentiality restrictions, PCS makes it impossible for consumers to investigate and make an informed decision as to whether they wish to do business with PCS. Indeed, PCS aggressively threatens to employ these provisions against consumers, including Mr. Seibert, who express dissatisfaction with PCS's work.

24.    Further, despite being the recipient of many complaints about its work, PCS states in the Agreement that it is "rated A+ at the Better Business Bureau 'BBB.'" While this may be literally true, the statement is misleading, as PCS has obtained this rating through confidentiality requirements and threats and intimidation, citing to the provision quoted in ¶ 18.  Upon information and belief, PCS routinely responds to customer complaints regarding its poor workmanship with threats of filing a "million-dollar lawsuit" against them for any violations of the purported confidentiality restrictions set forth in ¶ 18.

25.    There exists an actual controversy with respect to the enforceability of the provision quoted in ¶ 18.

26.    The enforceability of the provision quoted in ¶ 18 presents a ripe and substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment. The dispute is definite and concrete, and calls for specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

WHEREFORE, Mr. Seibert respectfully requests that the Court enter a declaration that the provision quoted in ¶ 18 is unenforceable, void as against public policy, and that the limitations period, and the arbitration and confidentiality provisions therein, are not operative; and Mr. Seibert should be afforded such other and further relief as the Court may deem appropriate.

## COUNT II
### (Fraud in the Inducement)

27.    The allegations in paragraphs 1 through 26 are incorporated herein as if fully set forth.

28.    By using the name "Stevie Marco" in his dealings with Mr. Seibert, Stephen Sieber, for PCS and at the request and with knowledge and approval of Derrick Sieber and PCS, made a false representation.

29.    The true identity of Stephen Sieber was a material fact, as any rudimentary internet search of his real name would have revealed a pattern of complaints, fraud and misrepresentations in the construction industry and otherwise.

30.    PCS, Derrick Sieber, and Stephen Sieber knew that Stephen Sieber was using a pseudonym, and that he was doing so to avoid consumer discovery of his past.

Furthermore, PCS and Derrick Sieber affirmatively took steps to deceive Mr. Seibert regarding Stephen Sieber's affiliation with PCS by providing Mr. Seibert with a fraudulent termination communication stating that Stephen Sieber was no longer employed by PCS when in fact Stephen Sieber had merely been reassigned to a different project(s).

31.     Stephen Sieber used a pseudonym, at the request and with knowledge and approval of Derrick Sieber and PCS, with the intent to deceive consumers, including Mr. Seibert.

32.     Mr. Seibert reasonably relied on the fact that he located no material adverse information regarding "Stevie Marco," in agreeing to do business with PCS and Derrick Sieber.

33.     PCS, Derrick Sieber and Stephen Sieber further misrepresented to Mr. Seibert that PCS has obtained all permits required to proceed with the work when no such permits had in fact been secured.

34.     Mr. Seibert reasonably relied on the representation that required permits had been secured in agreeing to allow PCS and Derrick Sieber to commence work under the Agreement.

WHEREFORE, Mr. Seibert respectfully requests that the Court enter judgment in his favor, and against PCS, Derrick Sieber, and Stephen Sieber, (a) holding that the Agreement is void as procured by fraud; temporarily, preliminarily, and permanently enjoin any arbitration proceedings initiated under the Agreement;

and awarding Mr. Seibert judgment for compensatory damages of $50,000, plus punitive damages of $100,000, plus prejudgment and post-judgment interest, plus costs, plus Mr. Seibert's reasonable attorneys' fees; and Mr. Seibert should be afforded such other and further relief as the Court may deem appropriate.

**COUNT III**
**(Reformation)**

35.     The allegations in paragraphs 1 through 34 are incorporated herein as if fully set forth.

36.     The Agreement was procured by fraud, including the misrepresentation of the identity of Stephen Sieber.

37.     To the extent that such fraud does not render the entire agreement void, since Mr. Seibert's assent to the contract was procured by fraud, and because the terms of the provision quoted in ¶ 18 are illegal and void as against public policy, the Agreement should be reformed to strike and delete the provision quoted in ¶ 18.

WHEREFORE, Mr. Seibert respectfully requests that the Court enter an Order deeming the Agreement reformed, to strike and delete the provision quoted in ¶ 18; temporarily, preliminarily, and permanently enjoin any arbitration proceedings initiated under the Agreement; and Mr. Seibert should be afforded such other and further relief as the Court may deem appropriate.

## COUNT IV
### (Breach of Contract)

38.     The allegations in paragraphs 1 through 37 are incorporated herein as if fully set forth.

39.     PCS and its general partner, Derrick Sieber, breached the Agreement and Modification by not timely completing the work, and by performing the work in a manner not consistent with the standards set forth in the Agreement and in the trade, as detailed in ¶ 11. Further, PCS failed to obtain the required permits to perform the work in breach of the Agreement and in violation of DC law.

40.     As a result of the aforesaid breaches, Mr. Seibert has suffered damages.

WHEREFORE, Mr. Seibert respectfully requests that the Court enter judgment in his favor, and against PCS and Derrick Sieber, for compensatory damages of $50,000, plus prejudgment and post-judgment interest, plus costs, plus Mr. Seibert's reasonable attorneys' fees; and Mr. Seibert should be afforded such other and further relief as the Court may deem appropriate.

## COUNT V
### (D.C. Code §§ 28-3901, *et seq.*)

41.     The allegations in paragraphs 1 through 40 are incorporated herein as if fully set forth.

42.     The foregoing constitute unlawful trade practices under multiple subsections of D.C. Code § 28-3904, including referenced instances where PCS, Derrick Sieber, and Stephen Sieber:

(a) represented that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

(d) represented that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e) misrepresented as to a material fact which has a tendency to mislead;

(e-1) represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(f) failed to state a material fact if such failure tends to mislead;

(f-1) used innuendo or ambiguity as to a material fact, which has a tendency to mislead;

(p) falsely stated or represented that repairs, alterations, modifications, or servicing have been made and receiving remuneration therefor when they have not been made;

(r) made or enforced unconscionable terms or provisions of sales or leases;

(u) represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not;

43.    Mr. Seibert has been damaged by PCS's, Derrick Sieber's, and Stephen Sieber's unlawful trade practices.

WHEREFORE, Mr. Seibert respectfully requests that the Court enter judgment in his favor, and against PCS, Derrick Sieber and Stephen Sieber, for compensatory damages of $50,000, trebled to $150,000, plus punitive damages of $300,000, plus prejudgment and post-judgment interest, plus costs, plus Mr. Seibert's reasonable attorneys' fees, plus an injunction against further unlawful trade

-13-

practices; and Mr. Seibert should be afforded such other and further relief as the Court may deem appropriate.

                              **MICHAEL SEIBERT**
                              By Counsel

                              /s/ Timothy B. Hyland
                              Timothy B. Hyland
                              DC Bar No. 988498
                              Counsel for Michael Seibert
                              HYLAND LAW PLLC
                              1818 Library Street, Suite 500
                              Reston, VA  20190
                              Tel.:   (703) 956-3566
                              Fax:   (703) 935-0349
                              Email: thyland@hylandpllc.com

                              /s/ Michael J. Bramnick
                              Michael J. Bramnick
                              DC Bar No. 500756
                              Counsel for Michael Seibert
                              BRAMNICK LAW, LLC
                              4520 East West Hwy, Suite 700
                              Bethesda, Maryland 20814
                              Tel.:   (301) 547-3647
                              Email: Mbramnick@BramnickLegal.com