# EXHIBIT  C

1

**SUPERIOR COURT FOR**
**THE DISTRICT OF COLUMBIA**

2

3

4    LAMAR TOLAND,

5         Plaintiff and Counterclaim-

6              Defendant

7         and

8    THE LAW FIRM OF BAR-ADON &

9    VOGEL, AND KENNETH VOGEL,
     CARTER FERRINGTON,  AND                    Case No. 16-006458 B

10   SUSAN SUNTICH,  INDIVIDUALLY

11        Counterclaim-Defendants               Hon. John Mott

12        v.

13   DERRICK SIEBER

14        and

15
     STEPHEN SIEBER,
16
          Defendants and Counterclaim-
17             Plaintiffs

18

19

20   **MOTION OF PRECISION CONTRACTING SOLUTIONS, LP**
     **TO VACATE ARBITRATION AWARD**

21

22        COMES NOW Precision Contracting Solutions, LP ("Plaintiff" or "PCS"), which

23   moves to vacate an arbitration award pursuant to Rule 70-I of this Court's Rules of Civil

24   Procedure.  In support thereof, Plaintiff states as follows:

25

26                                        1

## RULE 70-I REQUIRED STATEMENTS AND EXHIBITS

1.      On November 6, 2014, PCS and Lamar Toland, Plaintiff and Counter-Defendant in this proceeding, entered into a contract for residential construction services at 1946 - 3rd Street N.W.,  Washington D.C. 20001 (the "Property") (Exhibit1).

2.      Timothy Bloomfield, Esq. was selected as the arbitrator.  (Exhibit 2)

3.      Arbitrator Bloomfield issued an award on September 20, 2017 (Exhibit 3) that is now the subject of this motion to vacate.

4.      PCS filed a motion with the arbitrator (Exhibit 4) to correct or modify the award, which motion Arbitrator Bloomfield denied (Exhibit 5).

## INTRODUCTION

Timothy Bloomfield ("Bloomfield") was commissioned by the American Arbitration Association ("AAA") to be the arbitrator of record in AAA case # 01 0001-8579 in July of 2016. The case was a construction dispute between Precision Contracting Solutions ("PCS") and Lamar Toland ("Toland").   Derrick Sieber is the owner of PCS and his father is Stephen Sieber ("SCS"), a non-lawyer, who represented his son at the AAA hearing.  Both are Defendants and Counter-Plaintiffs in this proceeding.  Kenneth Vogel and Sarah Turley are partners and/or associates in the Bar-Adon and Vogel law firm (""Vogel") ) and represented Toland in the AAA litigation.   They, along with Toland, are Plaintiffs and Counter-Defendants in this proceeding.  During the initial scheduling conference in the arbitration, all  agreed that the AAA matter would be adjudicated as a Reasoned Award ("Award") with choice of law and venue to be in the District of Columbia. The Property at issue is located in the District of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Columbia, and PCS is a licensed contractor in the District of Columbia where the contract and work took place.   On September 20, 2017, an Award was issued by Bloomfield in the AAA matter.  The award was based on improper communications, prejudice, injustice, and fraud and concealment, with the arbitrator willfully and repeatedly exceeding his authority in an openly prejudicial, intentionally fraudulent and malicious manner in collusion against PCS.

PCS seeks a complete dismissal of the arbitration proceeding and a re-hearing with a newly appointed arbitrator.

## **FACTUAL BACKGROUND**

1. On November 6th, 2014, PCS and Toland entered into a construction contract that contained the following arbitration and confidentially provision:

2. *"Binding Arbitration; The parties to this contract agree that any and all disputes that cannot be settled in good faith by the parties shall be resolved through binding arbitration through the American Arbitration Association.  It is agreed that the cost of binding arbitration shall be shared equally by PCS and the Client.  Furthermore, no parties shall comment publically about any disputes that may arise or the results of any arbitration that may be required."*

3. On May 19, 2016, PCS filed a demand for arbitration for $75,000 under the arbitration and confidentially provisions in the contract.

4. Toland filed a counter-claim in excess of $100,000.

5. AAA convened an arbitration, and a preliminary hearing was held via telephone conference on August 17, 2016 with the AAA, Bloomfield, SCS, and Vogel attending.

6. A binding scheduling order was then issued by Bloomfield along with a standing verbal order not to send him exhibits but rather to bring arbitrator exhibit books to the hearing.

### COUNT 1
Violation of DC Code §§ 16-4423(a)(1-4) and 16-4423(d)
Improper Review of Documents Prior to the Hearing

7. The scheduling order issued to the parties by Bloomfield stated when exhibits, witness lists and expert reports were to be exchanged by the parties.

8. Bloomfield began receiving and studying exhibits in the case in violation of his standing order.

9. PCS was intentionally and irrevocably prejudiced by this receipt and consideration of documents by Bloomfield. Dozens of improper communications prejudiced PCS by allowing evidence and future testimony to be read and studied in advance by Bloomfield prior to the hearing.

10. PCS honored the standing order and never sent any of PCS's exhibits or expert reports to Bloomfield but rather gave Bloomfield PCS's exhibit book at the hearing as Bloomfield had instructed.

11. A highly prejudicial example is an expert report sent to Bloomfield months before the hearing along with multiple amended versions of that same report.

12. Bloomfield read those reports and admitted to doing so at the site visit to the property. During that site visit Bloomfield stated; *"I have been reading the Busse report and understand the need for the numbered stickers on the wall."*

13. The sending, receiving, and consideration of documents violated Bloomfield's own standing order and PCS's legal rights.

14. These highly prejudicial and intentional actions by Bloomfield violated D.C. Code §§ 16–4423 A(1), 2(A), 2(B), 2(C), 3, and 4 as well as AAA rules and are grounds for this Court to vacate Bloomfield's Award and order a re-hearing of the case ordered in front of a newly appointed arbitrator.

## COUNT 2
Violation of DC Code §§16-4423(a)(1-4) and 16-4423(d)
Improper Communications During a Site Visit to the Property

15. The next improper violation by Bloomfield took place at an ordered site visit at the Toland property. There Bloomfield and others s involved in the case - but not PCS - were walking from inside the house to the street and involved in conversation.

16. Once SCS approached, such individuals waited for SCS and then turned around and re-entered the house together and conducted a second walkthrough with stickers already placed all over the walls from an prior improper prior walk-through by Bloomfield. and one or more others involved in the case but not SCS.

17. These improper ex-parte meetings and discussions violated AAA rules as well as D.C. Code §§ 16–4423 A(1), 2(A), 2(B), 2(C), 3, and 4 and are cause for dismissal of Bloomfield and his Award and a newly appointed arbitrator to hear the case.

## COUNT 3
Violation of § DC Code 16-4423(a)(1-4) and § 16-4423(d)
Improper Communications During Breaks at the Hearing

18. The third class of prejudicial and improper communications between Bloomfield and others involved in the case took place on multiple occasions off the record during the hearing.

19. Time after time PCS would notice one or more others involved in the case conferring with Bloomfield in the hallway or the adjoining room having about evidence in the case.

20. Improper meetings also took place on the lunch break on the third day of the hearing when PCS came back from lunch to find Bloomfield and others involved in the case having lunch together in the conference room, again violating AAA rules and D.C. Code § 16–4423 A(1), 2(A) 2(B) 2(C), 3, and 4 and again constituting just cause to dismiss Bloomfield land his Award from the AAA proceeding.

**COUNT 4**
Violation of DC Code § 16-4423(a)(1-4) and § 16-4423(d)
Improper Communications After Hearing Closed

21. Improper communications involving Bloomfield and one or more others involved in the case continued after the hearing closed on Friday August 18, 2017. When SCS left the hearing room after the hearing was officially closed, he stood outside to door listening to the conversation between Bloomfield and one or more others involved in the case agreeing to the admission of additional evidence into the record that was not admitted or testified to at the hearing.

22. The next day Bloomfield sent out an e-mail to the parties reflecting the improper agreement he had reached with one or more others involved in the case after the hearing had closed.

23. These highly prejudicial improper communications with respect to admitting evidence into the proceeding after the close of the hearing willfully prejudiced PCS and denied its legal right to object to evidence or cross examine appropriate witnesses if evidence were to be considered by Bloomfield in his Award.

24. The following day e-mail communications verifying the e-parte agreement between Bloomfield and one or more others involved in the case was sent out to the parties by Bloomfield and copied to the AAA.

25. PCS complained to the AAA, putting them on notice of the improper communications that SCS had overheard and requested the dismissal of Bloomfield to the AAA.

26. The AAA ignored PCS's request.

27. The multiple improper communications that took place between one or more others involved in the case and Bloomfield before, during and after the hearing in violation of AAA rules and DC Arbitration law is just cause for vacating the Award and removing Bloomfield from the proceeding.

## COUNT 5
Violation of § DC Code 16-4423(a)(1-4) and § 16-4423(d)
Improper Consideration of Evidence

28. Bloomfield considered evidence after the hearing was closed that was not admitted at the hearing or even testified to, all at the request of one or more others involved in the case during improper communications.

29. PCS was intentionally stripped by Bloomfield of its legal right to object to the admissibility of evidence or to cross examine any witness who would testify about any evidence that Bloomfield would be relying on in his Award.

30. In his Award, Bloomfield, a practicing lawyer, repeatedly cited evidence not admitted at the hearing or testified to at all, which rises to the level of intentional prejudice, premeditated misconduct, fraud and undue means by which Bloomfield's Award was procured.

31. Evidence was also intentionally and repeatedly misrepresented by Bloomfield in his Award to the level of intentional false statements with no basis in fact.

32. In other cases, material evidence, such as PCS's expert testimony, was omitted from any consideration or even mention in Bloomfield's Award.

33. The AAA was informed of Bloomfield's willful disregard for due process, violations of D.C. law and the AAA rules and the resulting harm his actions were causing.

34. The AAA did nothing to investigate these serious allegations after receiving evidence in the form of Bloomfield's own e-mails.

35. Bloomfield's openly prejudicial state of mind was demonstrated by e-mail communications such as the one below that Bloomfield sent out the day after the hearing had closed confirming his improper communications with one or more others involved in the case and indicating that evidence not admitted or testified to at the hearing would in fact be considered in Bloomfield's Award.

36. Bloomfield's e-mail, sent out the day after the hearing closed, is stated below and violates DC Code §§ 16-4423 (A1)(A2)(A3)(A4) and § 16-4423(d) on its face;

> *On Sat, Aug 19, 2017 at 12:41 PM, Timothy Bloomfield <tjblaw@comcast.net> wrote:*
> *Dear Parties:*
>
> *This will reflect a change in my approach to review exhibits in deliberation on this matter. During the hearing, I advised that my intent was to review only exhibits referred to in testimony or argument by the parties. I raised the possibility of the parties' providing me after the hearing lists of other exhibits they desired me to review. On further reflection, I believe there may be relevant exhibits that were not referred to in the hearing. Therefore, I now intend to review not only exhibits referred to in the hearing but also such other exhibits I may find relevant. In addition, I ask the parties to provide me with lists of exhibits not mentioned at the hearing that they may want me to consider. I further direct that any such lists be submitted to me and the other party by close of business August 25, 2017.*

37. The AAA did nothing to undertake a good faith review of Bloomfield's unlawful actions and his competency to serve after being copied on this e-mail chain and after SCS put the AAA on notice of the due process violations contained in Bloomfield's e-mail and his ongoing intentional misconduct.

38. The AAA therefore conspired to protect Bloomfield from violations of AAA rules and D.C. law they knew to be ongoing based on Bloomfield's own words in his e-mails.

39. PCS responded in the e-mail below and vehemently objected to such a prejudicial mandate from Bloomfield after improper communications between one or more others involved in the case and Bloomfield had taken place.

> *From: Stevie Marco [mailto:marcostevie@gmail.com]*
> *Sent: Saturday, August 19, 2017 1:51 PM*
> *To: Timothy Bloomfield*
> *Cc: Steve Sieber; Kenneth Vogel ; Pro Se Manager of ADR Services*
> *Subject: Re: Precision Contracting Services and Lamar Toland*
>
> *PCS was significantly and intentionally prejudiced in the recent hearing by Arbitrator Bloomfield in the following ways.*
>
> *Arbitrator Bloomfield allowed Toland to continually introduce exhibits out of time that were not contained in the exchanged "Exhibit Books" pursuant to the scheduling order as many as 10 times.... This is entirely unacceptable and overtly prejudicial. The record of the proceeding was on tape as a result of Rule 29 and the record is crystal clear. These prejudicial violations that are officially in the record of the case violate the law. PCS completely adhered to the scheduling order and not one time asked to have new exhibits added to the litigation that were out of time that did not appear in PCSs exhibit book that was exchanged in time.*
>
> *Arbitrator Bloomfield wrongfully and repeatedly precluded PCS from entering evidence relevant to the controversy into the record that was a part of the exhibits that appeared in PCS's exhibit book that were exchanged in time. Most egregious is the Arbitrators refusal to allow evidence to be presented at the hearing with respect with Respondent's breach of the "Confidentially Provision" found in the contract at issue and the resulting damages that occurred as a result. Further, the Verified Complaint filed in the DC Court by Toland regarding this dispute was properly exchanged in PCSs exhibit book that mentions PCS 44 times and was wrongfully barred by Arbitrator Bloomfield from introduction into evidence and subsequent examination under oath. This unconscionable and prejudicial behavior repeatedly displayed by Arbitrator Bloomfield is in violation of District of Colombia Arbitration law.*

MOTION OF PRECISION CONTRACTING SOLUTIONS, LP
TO VACATE AAA AWARD
CASE NO. 16-000458 B

1
2
3
4
5
6
7
8

> *This most recent e-mail from Arbitrator Bloomfield is more of the same and is again outrageous and prejudicial and was arrived at by agreement through improper communication... after the record of the case had been officially closed. Therefore, with assistance from legal counsel, PCS puts the AAA and Arbitrator Bloomfield on notice that papers will be filed in the coming days with the AAA with copies to Judge Kravitz of the D.C. Superior Court requesting that the official record of the case be maintained with a further extension of the hearing to be held with a new and non-prejudicial and morally competent Arbitrator presiding that will hear all of the entitled evidence and claims for relief of PCSs to be added to the existing record. PCS will also be requesting the "New Arbitrator" to decide the case after the unlawful and prejudicial violations of Arbitrator Bloomfield have been corrected.*

9
10
11
12

40. SCS copied the AAA pro-se administrator on this response e-mail to alert the AAA to the improper communications between one or more others involved in the case and Bloomfield and PCS's concern about violations of D.C. Arbitration law and AAA ethical rules by Bloomfield.

13
14
15

41. The AAA did nothing to investigate or consider PCSs allegations even though the AAA was in the possession of dispositive evidence of Bloomfield's violations in the form of his own e-mails.

16
17
18

42. Bloomfield's emails violate D.C. § 16-4423(a)(1-4) and § 16-4423(d) by his announcing that he will be considering in his Award evidence not introduced at trial or testified to by anyone at trial and without PCS's right to cross-examine.

19
20
21

43. Bloomfield's state of mind is clear by his admittedly going through the exhibit book of Toland after the hearing had closed attempting to drum up evidence and litigate Toland's case for him, thus openly and intentionally prejudicing PCS.

22
23
24

44. Bloomfield is a practicing lawyer and understands well that fundamental fairness requires evidence to be testified to, made subject to cross examination, and admitted if it is to be considered by a finder of fact in any Court or arbitration tribunal.

25
26
27
28

45. Bloomfield, as a lawyer, also understood that PCS has a statutory right to object to the admission of evidence and to cross-examine any witness swearing to that evidence, and to put on rebuttal witnesses before evidence could be considered by Bloomfield in his Award.

46. PCS and SCS however were *pro-se* litigants, which makes the intentional abuse and willful misconduct of Bloomfield all the more punitive.

47. Bloomfield's own words in his e-mail communications above are dispositive in proving Bloomfield's passion to thwart due process and violate fundamental fairness and the rules of the AAA.

48. Bloomfield's actions were undertaken with intent to prejudice and harm well-intentioned *pro-se* PCS through fraud, undue means and intentional misconduct and in clear violation of §§ 16-4423 (A1)(A2)(A3)(A4) and 16-4423(d).  For these violations, Bloomfield's Award must be vacated and a new arbitrator appointed to re-hear the case.

**COUNT 6**
Violation of DC Code §§16-4423(a)(1-4) and 16-4423(d)
Improper Consideration of Phantom Evidence

49. Bloomfield established a documented pattern of willful disregard for D.C Code §§ 16-4423 (A1)(A2)(A3)(A4) and 16-4423(d) as he repeatedly and  illegally considered evidence in his Award that had not been admitted at the hearing or even testified to.

50. In other e-mail communications set forth below, one or more others involved in the case asked Bloomfield the night before the hearing and months after expert witness designations had passed to replace structural engineer designated to testify with a new structural engineer to testify to the first engineer's report. The e-mail below resulted in Bloomfield granting this highly prejudicial request over the strong objection of PCS's representative SCS.

51. More specifically, Bloomfield received the following request the night before the hearing:

> *August 15, 2017*
>
> *Dear Pro Se Manager:*
>
> *[Redacted] will be calling Mr. Om Sharma, PE as it's structural engineer expert witness. Mr. Sharma has not prepared a written report. The subject matter of his testimony is the same as the structural engineer that we originally intended to call.*

SCS responds on behalf of PCS:

> *PCS vehemently objects. Expert designations and reports were due months ago. This witness does not appear on [any] witness list and it is absolutely and totally improper at this late date for the arbitrator to even remotely consider this request. Especially in the face of PCSs being denied the right to submit evidence on the breach of confidentiality claim that was adjudicated to be out of time. Again, PCS vehemently objects to this new witness being added at the eleventh hour without a report being filed or notice of the witness.*

Arbitrator Bloomfield then responds:

> *Timothy Bloomfield <tjblaw@comcast.net> wrote: August 15th 2017*
>
> Dear parties
>
> *I will listen tomorrow to [this] request, but on its face, it seems quite prejudicial. It is quite an extraordinary request coming on the very eve of the hearing.*

52. Bloomfield, knowing well this belated witness request was grossly out of time and entirely prejudicial, granted the request anyway the next day at the hearing over the passionate objections of PCS's *pro-se* representative SCS.

53. The engineer referenced in the 11ᵗʰ hour e-mail witness request was OM Sharma ("Sharma"), who didn't even show up at the hearing the next day to testify to the first engineer's Report that had been submitted months earlier.

54. After OM Sharma did not show up at the hearing, Bloomfield was asked to issue a subpoena to order Sharma to show.

55. Bloomfield, again, granted this belated last minute request over the continuing objections of PCS's *pro-se* representative SCS and signed a subpoena for Sharma to appear and testify at the hearing the next day.

56. Sharma did not appear the next day.

57. There being no expert to testify to a report of another absent "expert," Bloomfield was asked on the third day of the hearing to admit a revised expert report of another expert, even though the maker of the report would not be testifying to it and was not a qualified structural engineer.

58. Over continuing objections from PCS's *pro-se* representative SCS, Bloomfield allowed a third new report to be presented at the hearing, with PCS having no chance to even read the belated prejudicial entry or begin to understand its contents as would be required to cross examine any witness testifying to it.

59. At the hearing the following day, another structural engineer showed up to testify to the <u>out of time</u> report allowed by Bloomfield into the record.

60. Bloomfield was then requested to allow an unqualified party, who is not a Structural Engineer, and who did not prepare the report, to testify to the phantom report of an Engineer who never showed up at the hearing at all.

61. Once again, and for the fourth time in a 48-hour period, Bloomfield granted the grossly prejudicial and belated request for a non-expert to testify to a new report created by a

MOTION OF PRECISION CONTRACTING SOLUTIONS, LP
TO VACATE AAA AWARD
CASE NO. 16-000458 B

party who did not show up at the hearing that was prepared by an earlier structural
Engineer who also never showed up to the hearing.

62. The non-qualified witness never even testified to the report of the phantom structural
engineer so nothing was ever admitted into evidence at all relating to any structural
defects on the Toland property.

63. Bloomfield, without any testimony or admitted evidence and ignoring the right of PCS to
cross examine any witness relating to the un-admitted report that remained in the exhibit
book, considered and then relied on inadmissible and unsupported evidence in his Award.

64. Bloomfield's series of improper and intentionally prejudicial rulings, wrongfully forced
upon *pro-se* litigants, violated the scheduling order, expert witness designation law,
notice requirements, and moral and ethical considerations.

65. Bloomfield's intentional misconduct and prejudicial behavior became a personal mission
against PCS that violated D.C. Code §16-4423(a)(1-4) and 16–44215 (d) as well as AAA
rules and Bloomfield's obligations as an arbitrator.

**COUNT 7**
Violation of D.C. Code §16-4423(a)(1-4)  and 16-4423(d)
Failure to Apply Controlling Contractual Provisions

66. The contract contained a Cost Not to Exceed Provision ("CNEP") in the following
paragraphs, a fact that Bloomfield knew in writing his Award:

> *(1) The cost of the material and labor services in this agreement shall not exceed the
> sum of $276,000.  There shall be no other hidden costs within the defined scope of
> work that shall cause the Cost Not to Exceed amount to increase.*

> *(2) It is understood that if the Client adds additional scopes of work not defined in
> this agreement, then the Client agrees to pay additional monies for those scopes
> of work performed as agreed by PCS and the Client.*

67. Subparagraph 2 immediately above ("CNEP [2]") was intentionally omitted by Bloomfield from discussion or consideration in his Award.

68. CEP (2) reflected extra work that was stipulated to be added to the CEP by the parties.

69. Bloomfield was keenly aware of CEP (2) as it was testified and stipulated to by both Parties at the hearing.

70. Bloomfield's intentional disregard for CEP (2) was his foundation for omitting from his award certain financial stipulations between the parties at the hearing that amounted to $76,600 in payments that Toland agreed to pay to PCS over and above the CEP.

71. Bloomfield therefore issued his Award through misconduct, fraud and undue means when failing to honor multiple stipulations agreed to by the parties in favor of PCS.

**COUNT 8**
Violation of DC Code § 16-4423(a)(1-4)  and § 16-4423(d)
Failure to Honor Agreement Regarding  Pre-Loan Work

72. The Parties  stipulated at the hearing that $7,000 be added to the CEP amount for "Pre-Loan Work".

73. Julian Harmon, who Bloomfield and PCS held out as a credible witness, affirmed this $7,000 stipulation in his testimony.

74.  Bloomfield did not consider or mention this $7,000 in his award.

**COUNT 9**
Violation of DC Code § 16-4423(a)(1-4)  and § 16-4423(d)
Failure to Honor Agreement Regarding Milfan Property Work

75.    The Parties stipulated at the hearing that $8,500 be added to the CEP for work performed on a separate rental property owned by Toland.

76. Julian Harmon, who Bloomfield and PCS held out as a credible witness, affirmed this $8,500 stipulation in his testimony.

MOTION OF PRECISION CONTRACTING SOLUTIONS, LP
TO VACATE AAA AWARD
CASE NO. 16-000458 B

77. Bloomfield did not consider or mention this $8,500 in his award.

## COUNT 10
Violation of D.C. Code § 16-4423(a)(1-4)  and § 16-4423(d)
Failure to Honor Agreement Regarding Steel I-Beam Work

78.  The Parties stipulated at the hearing that $15,000 be added to the CEP for the

"Installation of 2 Steel I Beams" in the basement to replace the failed 100-year-old wood

beams and brick columns at the Property.

79. Julian Harmon, who Bloomfield and PCS held out as a credible witness, affirmed  this

$15,000 stipulation in his testimony.

80. Bloomfield did not consider or mention this amount in his award.

## COUNT 11
Violation of DC Code § 16-4423(a)(1-4) and § 16-4423(d)
Failure to Honor Agreement Regarding Waterproofing Services

81. The Parties stipulated at the hearing that $15,000 be added to the CEP for provision for

"Waterproofing Services" to be added to the CEP amount.

82. Julian Harmon, who Bloomfield and PCS held out as a credible witness, affirmed  this

$15,000 stipulation in his testimony.

83. Bloomfield did not consider or mention this amount in his award

## COUNT 12
Violation of DC Code § 16-4423(a)(1-4) and § 16-4423(d)
Failure to Honor Agreement Regarding Window and Door Work

84.  The Parties  stipulated at the hearing that $11,600 be added to the CEP for the restoration

of the front "Windows and Doors".

85. Julian Harmon, who Bloomfield and PCS held out as a credible witness, affirmed  this

$11,600 stipulation in his testimony.

16

MOTION OF PRECISION CONTRACTING SOLUTIONS, LP
TO VACATE AAA AWARD
CASE NO. 16-000458 B

86. Bloomfield did not consider or mention this amount in his award.

### COUNT 13
Violation of DC Code §16-4423(a)(1-4)  and § 16-4423(d)
Failure to Honor Agreement Regarding Additional Bedroom Closet Work

87.  The Parties stipulated at the hearing that $6,500 be added to the CEP for the construction of a bedroom closet.

88. Julian Harmon, who Bloomfield and PCS held out as a credible witness, affirmed  this $6,500 stipulation in his testimony.

89.  Bloomfield did not consider or mention this amount in his award.

### COUNT 14
Violation of DC Code § 16-4423(a)(1-4) and § 16-4423(d)
Failure to Honor Agreement Regarding Exterior Painting Work

90.  The Parties stipulated at the hearing  that $7,000 be added to the CEP for exterior house painting performed.

91. Julian Harmon, who Bloomfield and PCS held out as a credible witness, affirmed  this $7,000 stipulation in his testimony.

92. Bloomfield did not consider or mention this amount in his award.

### COUNT 15
Violation of DC Code §16-4423(a)(1-4) and § 16-4423(d)
Failure to Honor Agreement Regarding Owner Provided Materials Funds

93.  The Parties stipulated at the hearing that $6,500 be added to the CEP for Owner Provided Materials ("OPM") that PCS paid for during the refinance the second loan when Toland ran out of money.

94. Julian Harmon, who Bloomfield and PCS held out as a credible witness, affirmed  this $6,500 stipulation in his testimony.

MOTION OF PRECISION CONTRACTING SOLUTIONS, LP
TO VACATE AAA AWARD
CASE NO. 16-000458 B

95. Bloomfield did not consider or mention this amount in his award.

### COUNT 16
Violation of D.C. Code § 16-4423(a)(1-4) and § 16-4423(d)
Wrongful Denial Regarding Uncontested Architectural Work

96. In addition to the above stated stipulations between the parties concealed by Bloomfield amounting to $76,600, Bloomfield's award also omitted uncontested PCS claims amounting to an additional $78,900 from his Award.

97. The uncontested claims were testified to at the hearing by witnesses and supporting exhibits and were not countered by opposing testimony.

98. The first of these claims was that PCS at the specific direction of Toland created drawings for an agreed upon sum of $5,000

99. Toland did not contest PCS's claim of $5,000 for drawings that Toland instructed PCS to draft.

100.    In Bloomfield's Award, he made the intentionally false statement that the "*$5,000...r Drawings are denied for lack of proof and evidence they were performed*"

101.    Exhibits *F54* through *F60* in PCS's exhibit book contain the drawings at issue that were admitted into evidence, testified to by PCS representatives, and uncontested by Toland.

102.    Bloomfield's false statement of a material fact continued when stating in his Award that the work  was the responsibility of PCS.

### COUNT 17
Violation of D.C. Code § 16-4423(a)(1-4) and § 16-4423(d)
Wrongful Denial Regarding Vaulted Master Bedroom Ceiling Work

103.    Bloomfield's intentional false statements of fact also concerned PCS's  master bedroom ceiling claim of $15,650.

104.    In Bloomfield's order, he found  the "*$15,600 claim for the construction of a cathedral vaulted ceiling in the master bedroom is denied for lack of proof and evidence they were not performed.*"

105.    The above stated representations of Bloomfield are intentional false statements.

106.    Bloomfield made a site visit to the property and saw with his own eyes the cathedral vaulted ceiling that was specifically pointed out to him by PCS's representative SCS.

107.    Toland never disputed the obligation of payment for the vaulted bedroom ceiling or that the work was properly performed after testimony was entered into the record about such construction and that DCRA approved inspections for that work.

### COUNT 18
Violation of DC Code §16-4423(a)(1-4) and § 16-4423(d)
Wrongful Denial Regarding Uncontested Mold Remediation Work

108.    Nowhere in the record did  Toland contest PCS's claim for mold remediation, found in PCSs summary of damages, for $8,750 as testified to by PCS witnesses.

109.    Bloomfield intentionally ignored evidence that was presented at trial on this claim including photos, site visits and cancelled checks in support of the $8,750 claim.

110.    Toland never opposed the mold remediation work performed or the cost presented at the hearing associated with the mold remediation work, nor did he put up any witness or document to dispute the claim.

111.    In his Award, Bloomfield did not credit PCS $8,750 for its mold remediation work.

## COUNT 19
Violation of D.C. Code § 16-4423 (A1)(A2)(A3)(A4) and § 16-4423(d)
Wrongful Denial Regarding Uncontested Window Well Work

112.    Nowhere in the record did Toland contest PCS's claim of a rear window well installation found in PCSs summary of damages for $9,500.

113.    Bloomfield intentionally ignored evidence of this work presented at the hearing including photos, site visits and cancelled checks.

114.    Toland never opposed the work in place for the rear window well or the cost presented at the hearing associated with it., nor did he put up any witness or document to dispute the claim.

115.    In his Award, Bloomfield did not credit PCS $9,500 for the rear window well installation.

## COUNT 20
Violation of DC Code §16-4423(a)(1-4) and § 16-4423(d)
Wrongful Denial Regarding  Uncontested Labor Force Losses

116.    Nowhere in the record did Toland contest PCS's claim of lost labor wages found in PCS's summary of damages for $40,000.

117.    PCS's exhibit book contained extensive documented evidence, introduced at the hearing and testified to by PCS owner Derrick Sieber, that supported PCS's lost labor wages of $40,000 as a result of the contact having to be stopped because Toland ran out of money.

118.    Bloomfield, instead of addressing the evidence and testimony of PCS in his Award, denied the $40,000 in lost manpower and intentionally misrepresented the record by concealing facts and evidence material to the controversy.

119.    Toland put up no evidence or witnesses on the record or even disputed PCS's $40,000 claim for loss of manpower wages.

120.    Bloomfield did not credit PCS this $40,000 in his Award.

121.    This $40,000 amount, when added to the other uncontested claims discussed above, represents $78,900 in uncontested claims at the hearing and an additional $76,600 of stipulated claims as pled in Counts 8 through 15.

122.    The total dollar amount that Bloomfield intentionally concealed from his Award that were stipulated to and/or uncontested by Toland was $155,500.

123.    The combined stipulated to and uncontested claims were intentionally and fraudulently omitted from Bloomfield's Award in violation of D.C. Code §16-4423(a)(1-4) and § 16-4423(d), which mandates the vacating of Bloomfield's award and appointment of a new arbitrator.

**COUNT 21**
Violation of D.C. Code § 16-4423(a)(1-4) and § 16-4423(d)
Failure to Properly Take into Account the Notice of Infraction by DCRA Finding Toland Liable for
Failure to Obtain Proper Permits for the First and Second Floors of the Property

124.    Bloomfield omitted to mention a material fact in his Award - i.e., that Lamar Toland was issued a Notice of Infraction ("NOI") and $5,000 fine by the D.C. Department of Consumer and Regulatory Affairs ('DCRA") for failing to obtain the proper permits in accordance with the Permits and inspections provision in Toland' contract with PCS, which stated: *"PCS shall obtain the proper permits at the sole direction of the property owner. PCS cannot legally obtain a building permit unless acting as an agent for the property owner. PCS shall call for and obtain all of the inspections required by law based on the permit type that is issued. It shall be the legal responsibility of the property owner to make sure the applicable building permit has been obtained."* (emphasis added)

125.    The NOI to Toland was submitted to Bloomfield.

126.    Bloomfield's intentional failure to properly consider the Toland NOI in his Award represents an ongoing pattern of repeated and intentional fraud and tortious misconduct.

127.    The fact that the NOI issued by DCRA to Toland would have torpedoed any legal claim for lost rent by Toland.

128.    Bloomfield's omitted any discussion of the Toland NOI from his Award.

129.    This fraudulent concealment of the Toland NOI and the resulting $63,935 Award that was granted Toland for lost rent while concealing the Toland NOI amounts to gross dereliction by the arbitrator.

130.    The Toland NOI evidence was presented at the hearing by PCS with Bloomfield thereafter having full knowledge of its existence and its dispositive value to any lost rent claim by Toland.

131.    In further support of his Award of $63,935 in lost rent to be paid by PCS, Bloomfield states the following in his Award: *"Stop work orders were released on October 5th 2016, Toland Exhibit ("T Ex") 14-7. No final inspection was ever obtained."*

132.    Exhibit L1 in PCS's exhibit, however, is an e-mail sent to DCRA and city council members on February 27th 2017 disputing the Toland NOI concealed by Bloomfield.

133.    The outstanding NOI to Toland made it impossible for any final inspection and use and occupancy final inspection until there was a final adjudication of the Toland NOI and payment of fine.

134.    Bloomfield knew well that the record of the case did not include Toland's exhibit 14-7.

135.    Bloomfield took it upon himself to comb through all of the unadmitted evidence in Toland's exhibit book to concoct a rationale to frame PCS and wrongfully grant Toland

MOTION OF PRECISION CONTRACTING SOLUTIONS, LP
TO VACATE AAA AWARD
CASE NO. 16-000458 B

an additional $63,935 in his Award for lost rent using the unadmitted Exhibit 14-7 evidence.

136.    Paragraphs 41 through 54 of the Award, together with the referenced Bloomfield e-mail, give a prime example of Bloomfield's promise to rely on evidence not admitted into this proceeding in the issuance of his Award.

137.    Bloomfield's unlawful Award of $63,935 in lost rent to Toland, added to the concealment of party stipulations and uncontested claims amounting to $155,500, represents $219,435 that Bloomfield wrongfully Awarded Toland.

### COUNT 22
Violation of DC Code § 16-4423(a)(1-4) and § 16-4423(d)
Failure to Properly Take into Account Toland's Admission They Breached the Contract for Non-Payment Prior to any Alleged Breach by PCS

138.    There was persuasive testimony and evidence from both sides in the arbitration that Lamar Toland breached his payment obligations in the contract.

139.    Toland ran out of money, and it took months to get a second loan approved to pay PCS the monies in the rears, which were never fully paid.

140.    Julian Harmon testified that when he was brought into the project, it was because PCS was not being paid as the contract called for and PCS was threatening to place liens on the property for non-payment.

141.    Julian Harmon testified that a project manager named "Rodney" was hired by Toland to approve payments to PCS but was a "disaster" and negligent in submitting reports required for PCS to get paid.

142.    Toland's also promised to escrow funds so the payment issue would not be a problem issue in the future.

143.    Bloomfield however hinted at Toland's admitted breach of contract in his Award

when stating; *"Delays during the course of construction were not all caused by PCS;*

*uncertainties about funding and payment no doubt led to some delays"*    (Award p. 8-9)

144.    The failure to pay, failure to escrow promised funds, and the admitted negligent

actions of "Rodney" were all intentionally omitted from any mention in Bloomfield's

Award.

### COUNT 23
Violation of DC Code § 16-4423(a)(1-4) and § 16-4423(d)
Failure to Properly Take into Account that All Required Inspections for the First and
Second Floors of the Toland Property Were Approved by DCRA

145.    Bloomfield intentionally misrepresented the record and concealed material facts when

stating the following on page 3 of his Award: *"Rough in inspections were performed on*

*April 21st 2015, and partial insulation inspection was performed on June 9th, PCS*

*obtained some final inspections in February, 2016.*

146.    The facts, evidence, and testimony prove that all the required inspections were

approved by DCRA third party inspectors.

147.    DCRA visited the site and re-inspected the property a second time and found that all

PCS work met the code and the prior inspection approvals would stand.

148.    DCRA received a copy of the report of Toland's expert when DCRA visited the

property; after reading the report and re-inspecting the property, DCRA flatly refused to

vacate the approved inspections and dismissed Toland's allegations.

149.    Rough-in plumbing and final plumbing inspections were approved by DCRA and

stand on the record today.

150.    Rough-in electrical and final electrical inspections were approved by DCRA and

stand on the record today.

151.   Rough-in gas and final gas inspections for the first and second floor were approved by DCRA and stand on the record today.

152.   Rough-in Heating and Air Conditioning and final Heating and Air Conditioning inspections were approved by DCRA and stand on the record today.

153.   Rough-in insulation and final insulation inspections were approved by DCRA and stand on the record today.

154.   Rough-in framing and final framing inspections were approved by DCRA and stand on the record today.

155.   These approved inspections were provided as the PCS contract called for and were approved not once, but twice by DCRA officials.

156.   The inspection approvals of DCRA are the standard of care and quality called for in the contract that the parties agreed to and are therefore controlling as properly completed.

157.   Bloomfield relied in his Award on the testimony of a terminated DCRA employee, Delanie Engelbert, who came up with a litany of code violations that had nothing to do with the scope of work in the contract or any of the approved inspections by DCRA.

158.   Ms. Engelbert was a DCRA investigator at the Property and was terminated from DCRA for misconduct.

159.   Once terminated by DCRA, her testimony in designed to embarrass DCRA and to get even with PCS, who had complained about Engelbert to DCRA officials in the past.

160.   During the hearing PCS began to cross examine Engelbert on her termination, only to have Bloomfield come to her rescue by striking any questions about Engelbert's checkered past and motivations for her testimony.

161.   Bloomfield openly praised Engelbert at the hearing as doing a "great job" to the point of PCS's representative informing Bloomfield of how improper his comments were.

162. Bloomfield intentionally concealed the fact in his Award that all of the required DCRA inspections for the Toland property were approved not once but twice.

163. Bloomfield concealed from his Award the truth about all of the inspection approvals and instead relied on a terminated DCRA employee over DCRA officials themselves.

164. Bloomfield violated DC Code § 16-4423 (a)(4) when attempting to override DCRA regulatory code approvals in favor of the testimony of terminated DCRA employee Engelbert.

**COUNT 24**
Violation of DC Code §16-4423(a)(1-4) and § 16-4423(d)
Failure to Properly Take into Account Evidence Impeaching HVAC Award to Toland

165. The HVAC Award of $20,000 to Toland in Bloomfield's Award was unfounded because DCRA approved all of the rough-in and final inspections for the HVAC work provided by PCS.

166. The fact that DCRA approved the code compliance of the PCS work on the Project is controlling as to the contractual obligations between the parties.

167. At the hearing, the alleged expert who provided an HVAC report for Toland that Bloomfield relied upon in his Award did not show up for the hearing to authenticate the report or to testify to the contents of the report.

168. Therefore, there is no evidence on the record of the proceeding to support Bloomfield's $20,000 Award to Toland when DCRA approved the HVAC.

169. Instead Bloomfield Awarded Toland $20,000 after DCRA's code compliant approvals of PCS's work, with Toland's HVAC expert not showing up to testify to his report and his report never being entered into evidence in the proceeding, and with PCS being denied any right of cross examination.

170.   This Award by Bloomfield to Toland of $20,000 for a new HVAC system was without factual basis or evidentiary support and was therefore procured in violation of D.C. § 16-4423 (A1)(A2).

**COUNT 25**
Violation of DC Code § 16-4423(a)(1-4) and § 16-4423(d)
Failure to Properly Take into Account Evidence Impeaching Plumbing Award to Toland

171.   The Plumbing award of $21,745 to Toland in Bloomfield's Award was issued in the same improper way as discussed in Count 24 above procured through the same improper means since DCRA approved all of the rough-in and final inspections for all of the plumbing work provided by PCS.

172.   The fact that DCRA approved the code compliance of the PCS plumbing work on the project is controlling as to the contractual obligations of PCS.

173.   Bloomfield exceeded his arbitration powers in violation of  § 16-4423 (A4) when he overrode a DCRA regulatory code approval.

174.   At the hearing, the alleged expert who provided Toland's plumbing report that Bloomfield relied upon in his Award did not show up for the hearing to authenticate the report or to testify to the contents of the report.

175.   Therefore, there is no evidence on the record of the proceeding to support Bloomfield's $21,745 Award to Toland, especially after DCRA approved the plumbing work of PCS on the Toland project on the first and second floors.

176.   Instead Bloomfield allowed an un-qualified witness to attempt to override DCRA's code compliant approval of PCS plumbing work; this exceeded Bloomfield's powers.

177.   This Award by Bloomfield to Toland of $21,745 for complete new plumbing systems is without factual basis or evidentiary support and was therefore issued in violation of D.C. § 16-4423 (A1) (A2).

**COUNT 26**
Violation of DC Code §16-4423(a)(1-4) and § 16-4423(d)
Failure to Properly Take into Account Evidence Impeaching Electrical Award to Toland

178.    The Electrical Award of $2,500 to Toland in Bloomfield's Award was issued in the

same improper way as discussed in Counts 24 and 25 since DCRA approved all electrical

work of PCS during rough-in and final inspections.

179.    The fact that DCRA approved the code compliance of the PCS electrical work on the

project is controlling as to the contractual obligations of PCS.

180.    Bloomfield exceeded his arbitration powers in violation of  § 16-4423(a)(4) when he

overroade DCRA regulatory code approvals for the electrical work.

181.    At the hearing, no expert provided any electrical work testimony on behalf of Toland,

and therefore Bloomfield has no evidence or factual basis to consider, other than the

DCRA approvals of the electrical work provided by PCS.

182.    The Award by Bloomfield to Toland of $2,500 for electrical systems is therefore

without factual basis, testimony, or evidentiary support and was therefore procured in

violation of D.C. Code § 16-4423 (A1) (A2).

**COUNT 27**
Violation of DC Code § 16-4423(a)(1-4) and § 16-4423(d)
Failure to Properly Take into Account Evidence Impeaching <u>Finishes</u> Award to Toland

183.    The Total Finishes Award of $11,000 in Bloomfield's award to Toland was issued in

the same improper way as discussed in Counts 24- 26 above and must be vacated because

Bloomfield ignored the fact that  Toland o tore up the insides of the first and second

floors in an attempt to expose faulty inspectins by DCRA third party inspectors, and

therefore the finish work that was later needed was Toland's responsibility, not PCS's.

MOTION OF PRECISION CONTRACTING SOLUTIONS, LP
TO VACATE AAA AWARD
CASE NO. 16-000458 B

## COUNT 28
Violation of DC Code § 16-4423(a)(1-4) and § 16-4423(d)
Failure to Properly Take into Account Evidence Impeaching Paints and Coatings Award to Toland

184. The Total Paints and Coatings Award of $18,000 in Bloomfield's award to Toland was issued in the same improper way as discussed in Counts 24-27 above ated because it was Toland that tore up the inside of the first and second floor in attempts expose faulty inspections by DCRA third party inspectors that proved to be unnecessary and therefore those paints and coating expenses fall of the shoulders of Toland.

185. Counts 25 through 28 represent $73,245 that was illegally awarded to Toland by Bloomfield after DCRA had approved all of those scopes of work and inspections not once but twice.

186. When the $73,245 amount is added to the previous total of $219,43 the new sum is $292,680 that was procured in Bloomfield's Award by improper means in violation of D.C. § 16-4423 (A1)(A2)

## COUNT 29
Violation of DC Code §16-4423(a)(1-4) and § 16-4423(d)
Failure to Properly Take into Account Qualified PCS Expert Witness Testimony and Report

187. Bloomfield intentionally omitted from his Award and did not properly consider the testimony of PCS's Expert Witness Structural Engineer Quinton Worrell, who testified on behalf of PCS for 45 minutes at the hearing.

188. Mr. Worrell has been a licensed structural engineer in the District of Columbia for 45 years and his credentials are held in the highest regard in the District of Columbia engineering community and at DCRA.

189. Mr. Worrell was the engineer of record on the matter now under consideration and gave specific expert testimony about the structural condition of the basement and the

structural integrity of the work performed by PCS.

190.    Mr. Worrell testified he had been to the site many times and had consulted with PCS throughout the construction. Mr. Worrell provided a certified report with his official engineering stamp affixed that concluded: *"Based on observations, all uncovered work was complete in accordance with the provisions of the IRC 2012."*

191.    Mr. Worrell testified under oath that there was no structural failure in the building, that the work of PCS met the *IRC 2012* code, and that no remedial work was required.

192.    Mr. Worrell was the only designated expert witness with the credentials to provide such a legal conclusion on structural certification who testified at the hearing.

193.    Bloomfield's Award granted Toland $53,500 for *"needed structural repairs"* when there is absolutely no evidence or professional testimony stating anything was wrong with the basement, as professional Engineer Quinton Worrell testified to.

194.    Bloomfield's failure to mention Worrell and his impeccable credentials, findings, and testimony impeaches his Award.

195.    As stated earlier, Toland's expert witness and structural engineer never showed up at the hearing, so no evidence or testimony was ever entered into the record to begin to impeach the testimony of Quinton Worrell.

196.    Instead of addressing Mr. Worrell's findings in his Award, Bloomfield relied on non-expert and terminated DCRA employee Delanie Engelbert who is not a professional engineer and further admitted that she knows nothing about cost or corrective measures needed for structural elements.

197.    As if the concealment of Mr. Worrell's under-oath testimony were not enough, another structural engineer hired by Toland provided his assessment of the structural condition of PCS work to the basement.

198.   On April 14th, 2015, AS& R Consulting, at the request of Toland, visited the property and provided a certified engineering report with respect to the completed PCS work in the basement:  A.S. & R stated this about the work of PCS:

199.   *"No movement in the foundation or in other walls was observed in present condition, which indicate that no settlement is occurring at the present time.  There was no visible signs of the sinking of the wall or settling of the floor in the basement level. Presently whole wall foundation appears to be in structurally sound condition."*

200.   ADB, a general contractor, was also hired by Toland as a witness in the arbitration, and in his Award Bloomfield states: *"Based on the ADB estimates, as adjusted by the Arbitrator, the amounts to be awarded for such work [$53,500] are set out here."*

201.   Bloomfield failed to mention in his Award that the ADB report was not produced by a qualified structural engineer and was not admitted into evidence at the hearing or testified to by any witness, much less cross examined by PCS's representative.

202.   ADB never testified to any report by any structural engineer with regard to any PCS work performed in the basement.

203.   Therefore, as far as the record of the hearing is concerned, what Bloomfield relied on in his Award did not exist.

204.   No legal foundation therefore was established by any expert witness for Toland or any report admitted into evidence in the area of structural engineering to begin to challenge PCS's expert witness Quinton Worrell, who did testify, did enter his report on the record, and was legally qualified as a matter of law.

205.   The A.S. & R Associates report that was requested by Toland is also dispositive in its professional conclusion that there was nothing at all wrong with the structural integrity of the basement in support of Mr. Worrell's conclusions.

206.   Therefore, Bloomfield's Award of $53,500 for structural repairs to the basement of Toland's property was issued by improper means in violation of D.C. § 16-4423 (A1) (A2), along with the previous $292,680 amount bringing the total of fraudulently procured funds by Bloomfield to $346,180.

## COUNT 30
Confidentiality Violation in Filing of  Case # 16-00006458 in D.C. Superior Court
Tortious Interference With Prospective Business Relations

207.   On August 30th, 2016 Lamar Toland filed a Verified Complaint on the public docket in this proceeding ("D.C. Litigation") outside the AAA proceeding. The public filing intentionally violated the confidentiality provision in his construction contract with PCS and was filled with intentional false claims designed to harass and intimidate PCS's *pro-se* litigants in the AAA matter.

208.   The confidentiality provision stated: *"Furthermore, no parties shall comment publically about any disputes that may arise or the results of any arbitration that may be required."*

209.   The D.C. Litigation, unsupported as it was, could have been filed under seal to respect the confidentiality provision, but Toland filed the D.C. Litigation in the public forum that is D.C. Superior Court.

210.   The D.C. Litigation named Derrick Sieber, PCS Owner, and Stevie Marco as Defendants with the pleadings alleging wrongdoing by PCS 44 times.

211.   It is common practice for consumers, or their lawyers, to check the D.C. Superior Court docket before making a decision on a contractor.

212.   In the D.C. Litigation, one of the allegations in Toland's complaint accused PCS and its personnel of planting fake reviews on the Home Advisor website that defrauded D.C. consumers.

213.  At a hearing in front of the Honorable Judge Mott of the D.C. Superior Court, the Court asked for evidence supporting this "fake reviews" assertion.

214.  Toland was forced to admit to Judge Mott in open Court that no supporting evidence existed when he made that assertion in the D.C. Litigation.

215.  Judge Mott then dismissed that allegation.

216.  One or more others involved in the case and Toland used the D.C. Litigation and his false claims as a promotional tool to DCRA and to past and present PCS clients to maliciously harm the company's reputation, while intentionally violating the confidentially provision in the contract.

217.  One or more others involved in the case and Toland's false public claims in the D.C. Litigation caused catastrophic damage to PCS and the reputation of its owner Derrick Sieber and others involved with PCS.

218.  One or more others involved in the case and Toland's knowingly false claims published in the D.C. Litigation resulted in dozens of prospective PCS clients reading the scandalous allegations and then deciding <u>not to</u> do business with PCS.

219.  The false claims published by One or more others involved in the case and Toland in the D.C. Litigation resulted is millions of dollars in lost contracts and irreversible damage to the public good will of PCS, all of which intentionally violated the confidentially provision in the contract as well as Rule 11 of the D.C. Code for filing knowingly false claims in a court proceeding.

**COUNT 31**
Bloomfield Concealment of Confidentiality Violation Claims
Fraud, Tortious Interference With Prospective Business Relations

220.  When Bloomfield became the arbitrator in July of 2016, he reviewed a copy of the contract containing the confidentially provision prior to scheduling a conference call.

33

221.   The provision stated: *"Furthermore, no parties shall comment publically about any disputes that may arise or the results of any arbitration that may be required."*

222.   On August 17th, 2016, a scheduling conference was held by phone wherein PCS put Bloomfield on notice of the confidentiality violations and that PCS was seeking damages under the contract for such violations.

223.   Then on August 30th, 2016, Toland filed this D.C. Litigation outside of the AAA proceeding instead of pursuing a remedy at AAA to hear the claims.

224.   On May 10th, 2017 PCS moved Bloomfield to appoint an AAA Rule 7 Arbitrator to consider fraud and tortious interference claims based to PCS's intentional confidentially breach and false claims filed in the D.C. Litigation.

225.   Bloomfield intentionally prejudiced PCS by wrongfully denying the Rule 7 Arbitrator to hear PCSs motion to bring Toland into the arbitration individually because of his confidentiality violation.

226.   In Bloomfield's Award, he discussed his rationale for denying PCS a Rule 7 Arbitrator to hear the intentional violation of the confidentially provision in Toland's agreement with PCs: *"The request for a Rule 7 Arbitrator is untimely under Rule 7 and PCS has not shown good cause for this late request, as required by the rule. PCSs request to amend its claim, if granted, would introduce new witnesses and areas of testimony on the eve of the hearing . . ."* The order of May 18th,2017 then set the hearing for three months later:  August 16,17th and 18th of 2017.

227.   Bloomfield's order prejudiced PCS on its face because its stated the request was supposedly being made "on the eve of the hearing" when in the next sentence Bloomfield set the hearing for three-months later.

228.   Therefore Bloomfield's "eve of the hearing" rationale was false.

229. Bloomfield also stated that PCS *"has not shown good cause for the late request."*

230. The confidentiality element of AAA arbitration clause is a benchmark in the AAA process and is a primary reason so many in business include it.

231. From insurance companies to credit card companies this confidentiality clause is commonly agreed to by parties in dispute.

232. The intentional violation of a contractually agreed upon confidentiality provision and resulting damages should have been acted upon by Bloomfield..

233. Bloomfield realized the seriousness of the confidentially violation and intentionally prejudiced PCS from its legal right to pursue relief for the contact breach.

234. The fact that the breach of confidentially caused millions of dollars in damages to PCS after the filing of the D.C. lawsuit also establishes good cause for PCS's breach-of-confidentiality claims to be heard in the AAA matter.

235. Further good cause is that if Bloomfield and the AAA did not hear the breach of confidentiality claims then, One or more others involved in the case and Toland will likely claim Res Judicata or Collateral Estoppel if PCS were later to bring such claims in a D.C. Superior Court.

## COUNT 32
Confidentiality Violation by Defendants One or more others involved in the case and Toland
One or more others involved in the case Goes Public to City Council about PCS  Violating
Confidentially Provision

236. One or more others involved in the case, with total disrespect for the confidentially provision in the contract and the consequences for violating it, went to a public city council meeting and laid out to everyone all of his allegations regarding PCS, all while in the midst of a supposedly-confidential arbitration proceeding.

237. One or more others involved in the case also featured this D.C. Litigation at the City

Council meeting that was filled with false and unsupported claims in gross violation of the confidentially provision in the contract.

238.    This willful violation of the confidentially agreement shows a reckless pattern and disregard for the confidentially provision his Client signed onto.

239.    One or more others involved in the case's actions with the City Council caused an uproar with members of the Council calling DCRA to undertake added enforcement action against PCS.

240.    One or more others involved in the case also sent e-mail communications copying several Council members and DCRA in absolute and repeated violation of the confidentially provision in the contract with PCS.

241.    One or more others involved in the case intentionally prejudiced the arbitration proceeding with a contractually prohibited public relations campaign while also sending Bloomfield a copy of the D.C. Litigation.

242.    Bloomfield, aware of the D.C. lawsuit through improper communications with One or more others involved in the case, was now building a public case geared at DCRA taking actions against PCS that would help One or more others involved in the case to prevail in the arbitration matter.

243.    To the credit of DCRA, that agency stuck to the merits and did their job and in the end found Lamar Toland liable for all permit infractions on the first and second floors of the building,  which finding was fraudulently concealed from Bloomfield's Award.

244.    Much  damage was done to PCS from being smeared by the public filing of Toland and One or more others involved in the case's verified complaint about false endorsements of PCS on the Home Advisor rating system.

**COUNT 33**
Confidentially Violation by Defendants One or more others involved in the case, Turley and Toland
Public Filing of Montgomery County Lawsuit to Perfect Bloomfield Award

245.    One or more others involved in the case and Turley continued their pattern of
intentionally violating the confidentially provision in the contract by filing a second
public lawsuit in Mo 439218-V in Montgomery County in attempts to perfect the
Bloomfield's Award.

246.    The confidentially provision stated: *"Furthermore, no parties shall comment*
*publically about any disputes that may arise or the results of any arbitration that may be*
*required"*

247.    This habitual disrespect for the clear language of the confidentially provision in the
contract in intentional, malicious and sanctionable.

**CONCLUSION**

For the reasons set forth above, Defendants and Counter-Plaintiffs now seek an order from
the Court vacating the Arbitrator's award.

Respectfully submitted,

/s/  *Edward W. Lyle*

Edward W. Lyle, DC Bar 025700
1250 Connecticut Avenue N.W.
Washington D.C. 20036
Tel: (202) 333-4280
Fax: (202) 333-4282
Email: *ewlyle@west1805.com*
*Attorney for Precision Contracting*
*Solutions, LP*

January 19, 2017

37
MOTION OF PRECISION CONTRACTING SOLUTIONS, LP
TO VACATE AAA AWARD
CASE NO. 16-000458 B

1
2
3
## CERTIFICATE OF SERVICE

4    I hereby certify that I have this 19th day of January, 2018 sent a copy of the attached
**MOTION OF PRECISION CONTRACTING SOLUTIONS, LP   TO VACATE**
5 **ARBITRATION AWARD** to the following via the electronic service system approved by the
Court.
6
7
Lamar Toland
8 36833 Justin  Court
Palmdale, CA 93550
9
Kenneth Vogel, Esq.
10 Carter Ferrington, Esq.
Bar-Adon & Vogel, PLLC
11 1642 R Street NW
Washington DC 20009
12
13
14                                        /s/ *Edward W. Lyle*
                                          _____
15                                        Edward W. Lyle
16
17
18
19
20
21
22
23
24
25
26                              38
                  MOTION OF PRECISION CONTRACTING SOLUTIONS, LP
27                         TO VACATE AAA AWARD
                            CASE NO. 16-000458 B
28