**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL SEIBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-818-RMC |
| | ) | |
| PRECISION CONTRACTING | ) | |
| SOLUTIONS, LP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO MOTION
OF PRECISION CONTRACTING SOLUTIONS, LP TO
DISMISS OR STAY THIS PROCEEDING FOR LACK OF SUBJECT-
MATTER JURISDICTION**

The plaintiff, Michael Seibert ("Mr. Seibert"), submits the following as his memorandum in opposition to defendant Precision Contracting Solutions, LP's ("PCS") motion to dismiss this action against him pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction (the "Motion") (ECF No. 24).

## I.   INTRODUCTION

This action arises out of a breathtaking series of frauds and breaches of contract perpetrated by a contractor, PCS; Derrick Sieber, PCS's purported owner; and Stephen Sieber, Derrick Sieber's father and an employee of PCS. As if its frauds and breaches were not enough, PCS and Stephen Sieber followed up by waging a campaign of threats and attempted intimidation to try to foil disclosure of their dishonesty and incompetence. In furtherance of this, PCS now asks that this case be dismissed (or stayed) for arbitration.

However, PCS's argument is founded on analysis which is, to be generous, thin. Careful examination of its arguments reveal that the Motion must be denied. *First*, this is PCS's second motion under Fed. R. Civ. P., 12, which is impermissible. *Second*, there can be no reasonable argument – and PCS makes none – that this Court lacks subject matter jurisdiction. *Third*, the arbitration provision upon which PCS relies by its specific terms does not require arbitration of Mr. Seibert's claims in this action. *Fourth*, even if the arbitration provision upon which PCS relies is deemed to otherwise require arbitration of Mr. Seibert's claims in this action, the arbitration clause is unenforceable because it denies Mr. Seibert any effective remedy. And *fifth*, the arbitration clause is unenforceable because it is both unconscionable and is being used by PCS as an instrument to hide its pattern of threats and intimidation, that Mr. Seibert must maintain confidentiality (contrary to law), while itself engaging in a pattern of threats and attempted intimidation. PCS's motion ought therefore be denied.

## II.   FACTS

This action was commenced with the filing of a complaint on April 10, 2018. (ECF No. 1). Mr. Seibert is a citizen of the District of Columbia. *Id*. at ¶ 1. PCS is a limited partnership. *Id*. at ¶ 2. PCS's sole general and limited partner is Derrick

Sieber. *Id*. Derrick Sieber is a citizen of Maryland. *Id*.[1] The amount in controversy in this case exceeds $75,000. *Id*. at ¶ 3.

On or about December 8, 2017, PCS and Mr. Seibert entered into an agreement (the "Agreement") whereby PCS was to perform certain design, construction and remodeling services on Mr. Seibert's home in the District of Columbia. *Id*. at ¶ 6, Ex. 1. The Agreement was modified by email dated January 15, 2018. *Id*. at ¶ 6, Ex. 2.

In negotiating the Agreement and the scope of work with PCS, Mr. Seibert dealt with an employee of PCS named Stevie Marco. *Id*. at ¶ 7. Mr. Seibert now knows that Stevie Marco is not that individual's real name. *Id*. In fact, Stevie Marco is a pseudonym for Stephen Sieber. *Id*. Because Stephen Sieber has been adjudicated to have committed fraud and dishonesty in the past, and his former construction business has well-documented and sordid history of customer complaints and litigiousness,[2]  had Mr. Seibert been aware of Stephen Sieber's true identity, he would

---

[1] Stephen Sieber was initially included as a defendant, but Mr. Seibert subsequently dismissed him as a party. (ECF No. 7.)

[2] *See, e.g.*, Washington Post, *Homeowner's Web Gripe Draws Contractor Lawsuit*, Mar. 13, 2007, at http://www.washingtonpost.com/wp-dyn/content/article/2007/03/12/AR2007031201548.html; ABC News, *Contractor and Clients Wage War Online, and In Court*, Sept. 28, 2007, at https://abcnews.go.com/2020/story?id=3664101&page=1; Washington Post, *Home-Improvement Contractor Sued*, Nov. 3, 1990, at https://www.washingtonpost.com/archive/realestate/1990/11/03/home-improvement-contractor-sued/132d5925-312a-4b4e-80a6-650339ba8cea/?noredirect=on&utm_term=.70f2b5c002ca.

not have entered into the Agreement with PCS or any entity associated with Stephen Sieber. *Id*. at ¶ 8.

Ultimately, PCS's work was not timely completed; was shoddily performed; was performed by unlicensed subcontractors; and was performed without permits as required. *Id*. at ¶¶ 10-16. When Mr. Seibert complained about these shortcomings, PCS responded by filing a demand for arbitration against Mr. Seibert, with no detailed claims whatsoever, incredibly claiming that Mr. Seibert breached the Agreement. *See* ECF No. 16-1.

Mr. Seibert then commenced this action, seeking (1) a declaratory judgment that Section 18 of the Agreement is unenforceable; (2) seeking to void the Agreement as a result of fraud in the inducement; (3) seeking reformation of the agreement to delete Section 18 of the Agreement as it is void and illegal; (4) seeking damages as a result of PCS's breaches of the Agreement; (5) seeking enhanced damages under the D.C. Unfair Trade Practice Act. PCS has been held in default. (ECF No. 9).

The threats and attempted intimidation referenced in the Complaint (ECF No. 1, at ¶ 24) are not mere hyperbolic pleading. Indeed, true to form, after this action was filed, on May 29, 2018, Stephen Sieber left the following voicemail message for Mr. Seibert's counsel:

> Yes, Mr. Hyland, Stephen Sieber speaking. I hope you got my message I sent you, um, from one of the lawyer referral

services,[3] but suffice to say you are a very unethical character and I've done some investigation on you and your client and suffice to say, uh very stinky, okay. Um, um, your federal court debogglement [sic] is about to get thrown out back to arbitration then you've got to deal with me, homeboy. Okay, straight up in arbitration. We're filing an arbitration demand for half a million dollars at this point for the damages you've caused for your public disclosure of the lawsuit in violation of the arbitration provision in the contract. I'm filing bar complaints against you, I will not rest until you are disbarred, okay. So grow some hair and lose some weight. Respect.

Declaration of Timothy Hyland ("Hyland Decl."), at ¶ 3 (ECF No. 16-2). Then, on June 3, 2018, Stephen Sieber sent a similarly threatening email (with copies to Derrick Sieber, PCS and their counsel, with whom Stephen Sieber resides), making various scurrilous claims and threats, and closing with the following:

> Do not mistake the above stated claims as frivolous threats, as you are well aware of my litigation history, taking on Google, YouTube, the Washington Post and Angie's List. You should rather consider my promises factual statements that will take place. See you, your firm and Mr. Seibert in Arbitration, or in Court, as I will hang the pelts of you, your firm and Mr. Seibert on my wall as another victory over cheesy and unethical lawyers and … extortionists.   Let's get it on!

Hyland Decl. ¶ 4.

As to the facts set forth by PCS, at least one is inaccurate. The Motion states that this matter is on AAA's "fast track." In fact, the arbitrator has decided that the

---

[3] Stephen Sieber seems to be referring here to the instance in which he misrepresented to Martindale-Hubbell/Lawyers.com that he was a client of Mr. Hyland, and then provided an unfavorable client review. *See* ECF No. 10-1.

matter will <u>not</u> be on AAA's "fast track." And, by incorporation of Derrick Sieber's motion to dismiss, PCS takes the position that Mr. Seibert has not objected to proceeding with the AAA. However, in Mr. Seibert's response to the AAA proceeding, he stated, in his first substantive sentence, "Mr. Seibert does not submit to the jurisdiction of the American Arbitration Association…."[4]  PCS's claim to the contrary is manifestly untrue.

Because the operative provision of the Agreement is what is at issue here, it should be stated at length:

> The parties to this contract agree that any and all disputes that cannot be settled in good faith by the parties shall be resolved through binding arbitration that is initiated under the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") within 30 days of such dispute. No legal action may be initiated before the AAA or in any other arbitral or judicial forum against any director, officer, partner, employee or agent of, or anyone else associated with, one of the principals to this contract in connection with any dispute related to this contract. The party's sole recourse under this contract shall be against each other before the AAA. If the parties do not file a claim within the 30-day period stated herein, then all claims are barred from being brought by the parties in any and all legal forums. It is further agreed that the cost of binding arbitration shall be shared equally by PCS and the Client. It shall be clearly understood that any disputes that may arise are confidential with no public comment permitted in any form by either party relating to the dispute. The

---

[4] For this reason, even if the Court disagrees with all of Mr. Seibert's arguments below, PCS's request for dismissal is not appropriate. To the extent a challenge to arbitrability is pending with the arbitrator, a stay, and not dismissal, is the appropriate remedy. *See Mercadante v. XE Svcs., LLC*, 78 F. Supp. 3d 131, 147 (D.D.C. 2015).

> results of any Arbitration proceeding shall also be
> confidential with no public comment by either party
> permitted in any form relating to any award. The parties
> agree that any breach of this provision shall constitute a
> willful breach of contract.

As will be discussed below, this provision does not, by its terms, apply to Mr. Seibert's claims. And even if it did, it is so deeply infected by illegality and unconscionability, and denies Mr. Seibert any effective remedy, that it is unenforceable.

## III.   ARGUMENT

### A.   <u>**This motion is an improper second Rule 12 motion**</u>.

PCS previously filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5). (ECF No. 11). In this regard, Fed. R. Civ. P. 12(g)(2) is clear:

> Except as provided in Rule 12(h)(2) or (3), a party that
> makes a motion under this rule must not make another
> motion under this rule raising a defense or objection that
> was available to the party but omitted from its earlier
> motion.

The exception provided in Fed. R. Civ. P. 12(h)(2) is inapplicable here. Likewise, for the reasons set forth in Section III.B., below, the exception provided in Fed. R. Civ. P. 12(h)(3) is inapplicable. PCS could have raised the issues it now raises in its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5), but elected not to. Therefore, it has waived the arguments contained in this Motion. *See Filmore v. Palestinian Interim Self-Gov't Auth.*, 8 F. Supp. 3d 9, 13 (D.D.C. 2014) ("[i]f a party files a Rule 12(b) motion to dismiss, it may not subsequently assert any Rule 12(b) defenses that were available when the first Rule 12(b) motion was filed.") (quoting *Candido v. Dist. of*

*Columbia,* 242 F.R.D. 151, 161 (D.D.C. 2007), and citing Fed. R. Civ. P. 12(g), (h)(1); *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 813 (D.C. Cir.1988)). The Motion must therefore be denied.

B.   **This Court has subject matter jurisdiction over this action.**

The one exception to the rule barring serial Rule 12 motions is that a motion to dismiss for subject matter jurisdiction may be brought at any time. *See* Fed. R. Civ. P. 12(h)(3); *Lindsey v. United States*, 448 F. Supp. 2d 37, 48 (D.D.C. 2006). To this end, PCS styles its Motion as one brought under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. In the Motion itself, he never addresses subject matter jurisdiction, however, making it difficult to discern the basis for any such contention. It is understandable why he declined to do so: because this Court plainly <u>does</u> have subject matter jurisdiction over this action. Derrick Sieber, PCS's sole partner, is a citizen of Maryland. Therefore, all defendants are citizens of Maryland. *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990) (limited partnership is a citizen of the state or states of which its partners are citizens). Mr. Seibert is a citizen of the District of Columbia. The amount in controversy exceeds $75,000. Therefore, there plainly exists diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

To the extent Derrick Sieber is suggesting that the existence of an arbitration provision divests the Court of subject matter jurisdiction, he is incorrect. *See Grasty v. Colorado Tech. Univ.*, 599 Fed. Appx. 596, 597 (7th Cir. 2015) ("an agreement to arbitrate does not affect a district court's subject-matter jurisdiction."); *see also*, *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 146 (D.D.C. 2002) ("this Court

finds that the [Federal Arbitration Act] statutory scheme for assessing whether parties must submit their claims to arbitration necessarily confers jurisdiction on the Court to determine the enforceability of the agreement when the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue .... In this case, the plaintiff has placed the arbitration agreement in issue for this Court's determination and, thus, rather than divesting the Court of jurisdiction, the filing of this action actually conferred to the Court the obligation, pursuant to the FAA, to determine the enforceability of the agreement and decide whether arbitration should be compelled.") (internal citation and quotations omitted).

Accordingly, this Court plainly has subject matter jurisdiction over this action, and dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is not appropriate.

C.   **The arbitration clause does not apply to this action.**

1.   This Court is entitled to determine arbitrability.

Where, as here, a "contract is silent on the matter of who is to decide a threshold question about arbitration, courts determine the parties' intent using presumptions. That is, courts presume that the parties intended courts to decide disputes about arbitrability." *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)). Because arbitration provisions are in essence a matter of contract between the parties, it is for the courts to decide whether the parties are bound by a given arbitration clause. *Howsam,* 537 U.S. at 84 (holding that "a gateway dispute about

whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide") (internal quotation omitted).

Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995); *see also*, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *Skrynnikov v. Fed. Nat'l Mortg. Ass'n*, 943 F. Supp. 2d 172, 176 (D.D.C. 2013) (same).

Here, the provision relied upon by PCS is silent on the issue of who will determine arbitrability. It is therefore abundantly clear that such a determination is for this Court.

           2.    <u>The arbitration clause here does not cover Mr. Seibert's claims</u>.

There are two steps in determining whether a matter should be stayed or dismissed based upon an assertion of the existence of an arbitration clause. The court must determine both (1) whether the arbitration agreement encompasses the claims raised in the Complaint, and (2) determine the enforceability of the agreement to arbitrate. *See Adam Corp./Grp. v. F.D.I.C.*, 585 F. Supp. 2d 13, 16-17 (D.D.C. 2008); *Nelson,* 215 F. Supp. 2d at 146; *Nur v. K.F.C., USA, Inc.,* 142 F. Supp. 2d 48, 50-51 (D.D.C.2001).

To begin, Mr. Seibert's claims are not within the scope of the arbitration clause in the Agreement. The Agreement provides for arbitration of a distinct type of matter:

"any and all disputes <u>that cannot be settled in good faith by the parties</u>." This limiting language is contained in PCS's standard contract, without modification.

The word "cannot," in turn, in its American usage, is defined by the Cambridge Dictionary as "to be unable or not allowed to."[5] However, objectively, Mr. Seibert's claims **can** be settled in good faith. They are not claims that cannot be settled. They merely are claims that have not been settled.

To be sure, another meaning could be ascribed to "cannot be settled" – arguably it could mean the parties do not settle the matter. However, arbitration is a matter of contract. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S.63, 67 (2010). Arbitration agreements are placed on equal footing with other contracts. *Id.* As such, "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *United Steelworkers of Am. V. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). And it is an established rule that where, as here, the language of the contract is ambiguous such that it is susceptible to multiple interpretations, the Court should construe it against the drafter. *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1486 (D.C. Cir. 1997) ("It is also accepted that ambiguous provisions are construed against the drafter of the contract" and holding that this rule applies to arbitration agreements).

PCS could have omitted the qualifying language and made all disputes arbitrable. But it chose to include language limiting the breadth of its clause. Had it

---

[5]   *See* https://dictionary.cambridge.org/dictionary/english/cannot.

intended the clause to mean all unsettled claims are arbitrable, it could have either omitted the language entirely (as a settled claim would not require arbitration), or it could have used words such as "any and all disputes that are not settled in good faith by the parties within 30 days after settlement discussions commence…." But it chose not to. Because this case objectively is one that can be settled in good faith, the arbitration clause is inapplicable, and the Motion must therefore be denied.

D.   **The arbitration clause is invalid because it has the effect of depriving Mr. Seibert of a statutory remedy.**

The clause relied upon by PCS is unusual. While, according to PCS, it compels the parties to arbitrate disputes, it then provides, in effect, that an arbitration award cannot be confirmed and enforced, as permitted by Section 9 of the Federal Arbitration Act (9 U.S.C. § 9). The offending provision provides, in pertinent part, "The results of any Arbitration proceeding shall also be confidential with no public comment by either party permitted in any form relating to any award."

An arbitration provision which has the effect of depriving a party of statutorily-prescribed remedies is unenforceable. *See, e.g., Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2014); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 632 (1985) (holding that an arbitration clause may be unenforceable where enforcement would be unreasonable and unjust or that the proceedings would be so difficult and inconvenient as to deprive the plaintiff of his day in court). The clause here is worse than merely using arbitration to deprive a party of a statutory remedy. The clause here makes an arbitration award unenforceable, contrary to the

provisions of 9 U.S.C. § 9. This is manifestly contrary to public policy, contrary to law, [6] and renders the arbitration provision unenforceable. According to this provision, if Mr. Seibert were to obtain an award in arbitration with PCS, he could never have the award confirmed,[7] and therefore is stripped of any ability to enforce the award. This is outrageous.

This is not, incidentally, an unnecessarily broad reading of the cited provision, conjuring a problem where none in fact exists. This is so because PCS has actually taken the position that the cited provision prohibits confirmation of awards, and has sued people for seeking confirmation of arbitration awards against them. For instance, in *Lamar Toland v. Derrick Sieber, et al.*, D.C. Superior Court, Case No. 16-006458 B, Mr. Toland sought confirmation of an arbitration award against Derrick Sieber and Stephen Sieber. PCS responded with a counterclaim against Mr. Toland and his counsel, in a Motion to Vacate Arbitration Award. A copy of this motion may be found at ECF No. 16-3. In Count 33 of its counterclaim, ECF No. 16-3, at 38, PCS sued Mr. Toland's counsel for "intentionally violating the confidentially [sic] provision

---

[6] This provision is also void *ab initio* pursuant to 15 U.S.C. § 45b. *See* discussion in Section III.E., below.

[7] PCS has argued elsewhere that such a claim can be brought, but that it must be filed under seal. This argument is founded upon the false assumption that a case can be filed under seal at the whim of the parties. Of course, it cannot. *See, e.g.*, *In re McCormick & Co., Inc.*, 2018 WL 2926156, at *6 (D.D.C. June 11, 2018) (holding that the Court makes an independent judgment as to whether documents should be sealed); *Grynberg v. BP PLC*, 205 F. Supp. 3d 1, 3 (D.D.C.) (denying motion to seal based on parties' confidentiality agreement).

in the contract" by filing an action to confirm Mr. Toland's arbitration award. The language in Mr. Toland's contract was substantially the same as the language here ("Furthermore, no parties shall comment publically [sic] about any disputes that may arise or the results of any arbitration that may be required.")

Accordingly, the arbitration clause is plainly void as against public policy. It has the effect of prohibiting confirmation and enforcement of any award, rendering the arbitration process meaningless, and depriving Mr. Seibert of any enforceable remedy as a result of PCS's misdoings – a remedy guaranteed by 9 U.S.C. § 9.

## E.    **The arbitration clause is otherwise invalid.**

The arbitration clause here suffers from additional infirmities which render it void as against public policy, and because it effectively bars Mr. Seibert from any remedies.

*First*, the clause contains the following sentence:

> No legal action may be initiated before the AAA or in any other arbitral or judicial forum against any director, officer, partner, employee or agent of, or anyone else associated with, one of the principals to this contract in connection with any dispute related to this contract.

PCS purports to be a limited partnership. This sentence purports to, in effect, change PCS to a corporation, and to insulate its partner from liability, even for fraud. And it is worse – this clause purports to prohibit Mr. Seibert from naming a necessary party in a claim, rendering any claim he would bring defective. This is so because a general partner of a limited partnership is a necessary party to a claim involving a limited partnership. *See Country Club Assoc. L.P. v. F.D.I.C.*, 918 F. Supp. 429, 438-39

14

(D.D.C. 1996) (citing *Shoreham Hotel L.P. v. Wilder,* 866 F. Supp. 1, 3 (D.D.C. 1994);

*Anderson v. Hall,* 755 F. Supp. 2, 4 (D.D.C. 1991)) ("The settled rule in the District of

Columbia is that a partnership is not a jural entity capable of suing or being sued.

Therefore, individual partners have been held to be proper and perhaps necessary

plaintiffs in any lawsuit brought by a partnership."). Hence, this clause has the effect

of making it impossible for Mr. Seibert to bring a valid claim against PCS, and allows

Derrick Sieber and Stephen Sieber to prospectively insulate themselves from liability

for torts, including fraud.[8]  Hence, for this reason too, the arbitration provision is void

as contrary to public policy.

      *Second*, the clause also contains the following sentence:

> It shall be clearly understood that any disputes that may
> arise are confidential with no public comment permitted in
> any form by either party relating to the dispute.

This provision is illegal and unenforceable. 15 U.S.C. § 45b provides that a provision

in a form contract (such as the Agreement) is "void from the inception of such contract

if such provision … (A) prohibits or restricts the ability of an individual who is a party

to the form contract to engage in a covered communication; [or] (B) imposes a penalty

or fee against an individual who is a party to the form contract for engaging in a

covered communication." 15 U.S.C. § 45b(b)(1). A "covered communication" is "a

---

[8] A prospective waiver of tort liability is unenforceable in the District of
Columbia unless it clearly and unambiguously expresses an intent to release the
party from liability for tortious conduct, and to the extent the conduct is not grossly
negligent, reckless, or intentional in nature. *See Mero v. City Segway Tours of
Washington DC, LLC*, 962 F. Supp. 2d 92, 97 (D.D.C. 2013).

written, oral, or pictorial review, performance assessment of, or other similar analysis of, including by electronic means, the goods, services, or conduct of a person by an individual who is party to a form contract with respect to which such person is also a party." 15 U.S.C. § 45b(a)(2). It is "unlawful for a person to offer a form contract containing a provision described as void in subsection (b)." 15 U.S.C. § 45b(c). Hence, not only is the arbitration provision containing this clause void *ab initio* – the mere offering of the Agreement to Mr. Seibert was unlawful. The sentence cited above, and the sentence requiring strict confidentiality of any award (discussed in Section III.D., above) are illegal, and the arbitration clause is therefore illegal and void.

*Third*, the arbitration clause purports to impose a 30-day contractual statute of limitations, again having the functional effect of barring any claims. Specifically, the clause provides, "The parties to this contract agree that any and all disputes that cannot be settled in good faith by the parties shall be resolved through binding arbitration that is initiated under the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") within 30 days of such dispute."[9] But in any event, such a short limitations period is inherently unreasonable, and therefore unenforceable. *Cf. Njang v. Whitestone Grp., Inc.*, 187 F. Supp. 3d 172, 179 (D.D.C. 2016) (holding that a six-month contractual limitation period for certain statutory claims was not "inherently unreasonable."). This clause – part of the same sentence

---

[9] It is impossible from this language to determine when a claim would be deemed to accrue, or what is meant by "within 30 days of such dispute."

as the initial arbitration language, is likewise unenforceable, further infecting and rendering void the arbitration provision on which PCS relies.

*Fourth*, and last, for all of the foregoing reasons, and because as described above Derrick Sieber, Stephen Sieber and PCS use the arbitration clause to perpetrate fraud and wage wars of threats and attempted intimidation, the arbitration clause should be deemed unconscionable. Moreover, the majority of courts considering the issue have found that arbitration clauses containing requirements that any award be kept confidential are unconscionable. S. Randall, *Judicial Attitudes Toward Arbitration & the Resurgence of Unconscionability*, 52 Buff. L. Rev. 185, 218-19 (2004). *See Ting v. AT&T*, 319 F.3d 1126, 1151-52 (9th Cir. 2003), *cert. denied*, 124 S. Ct. 53 (2003); *Cole*, 105 F.3d at 1476 (implying confidentiality in arbitration awards unconscionable because secrecy favors companies, who as repeat participants have superior information about arbitrators and may prevent potential plaintiffs from establishing intentional misconduct or a pattern or practice of discrimination by particular companies; confidentiality also precludes deterrent effect of adverse findings); *Plaskett v. Bechtel Int'l, Inc.*, 243 F. Supp. 2d 334, 344-45 (D. Virgin Islands 2003); *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1180-81 (W.D. Wash. 2002) (holding that confidentiality provisions advantage repeat participants and are thus unconscionable); *Acorn v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1172 (N.D. Cal. 2002) (finding confidentiality provisions unconscionable because they affect outcomes of arbitrations and favor defendant/drafter). *See also*, *Kloss v. Edward D. Jones & Co.*, 310 Mont. 123, 134, 54 P.3d 1, 8 (2002) (noting that

in analyzing unconscionability of an arbitration clause, the Court must ask whether the "proceedings [are] shrouded in secrecy so as to conceal illegal, oppressive or wrongful business practices?").

The arbitration clause here is unconscionable. It demands secrecy. It prohibits confirmation of an award. It unlawfully prohibits the customer from commenting on the arbitration (or anything else). And it is used to conceal PCS's, Derrick Sieber's and Stephen Sieber's breathtaking series of frauds, and the threats and intimidation they use against dissatisfied customers (and their counsel).

To be sure, arbitration agreements are favored in the law. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). But the Federal Arbitration Act specifically recognizes that an arbitration agreement need not be enforced "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If ever there is to be an arbitration clause that should not be enforced, this is it. It is infected with illegality; protects (and encourages) fraud, threats, and intimidating behavior; and renders awards effectively unenforceable. The clause should not be enforced. And PCS and Derrick Sieber should be required to answer for their misfeasances and malfeasances in this Court. Their days of hiding in the shadows and victimizing the unwitting should come to an end, now.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny PCS's motion.

Dated:   August 2, 2018.

Respectfully submitted,


By: /s/ Timothy B. Hyland
Timothy B. Hyland
DC Bar No. 988498
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA 20190
(703) 956-3566 (Tel.)
(703) 935-0349 (Fax)
thyland@hylandpllc.com


By: /s/ Michael J. Bramnick
Michael J. Bramnick
DC Bar No. 500756
BRAMNICK LAW, LLC
4250 East West Highway, Suite 700
Bethesda, MD 20814
(310) 547-3647  (Tel.)
mbramnick@bramnicklegal.com

*Counsel for Michael Seibert*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 2, 2018, I caused to be filed electronically the forgoing with the Clerk of Court for the United States District Court for the District of Columbia using the CM/ECF system, which will in turn provide service and an NEF to:

Edward Lyle, Esquire
1250 Connecticut Avenue, N.W., Suite 700
Washington, DC 20036


 /s/ Timothy B. Hyland
Timothy B. Hyland