## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL SEIBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-818-RMC |
| | ) | |
| PRECISION CONTRACTING | ) | |
| SOLUTIONS, LP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN OPPOSITION TO MOTION TO QUASH SUBPOENA

The plaintiff, Michael Seibert ("Mr. Seibert"), submits the following as his memorandum in opposition to defendants' motion to quash a subpoena issued to Comcast Cable Communications, LLC ("Comcast") in this action (the "Motion") (ECF No. 30).

## I.    INTRODUCTION AND FACTS

This action arises out of a breathtaking series of frauds and breaches of contract perpetrated by a contractor, Precision Contracting Solutions, LP ("PCS"), Derrick Sieber, PCS's owner, and Stephen Sieber (who uses the pseudonym "Stevie Marco"), Derrick's father and an employee of PCS. Central to the action is the allegation that PCS, Derrick Sieber, and Stevie Marco wage campaigns involving threats and attempted intimidation to try to foil disclosure of their dishonesty and incompetence.

After this action was commenced, defendants engaged in precisely the same threats and attempted intimidation that underlie the allegations in the complaint.

Pertinent here, on May 23, 2018, Derrick Sieber and his counsel called the plaintiff's counsel, Mr. Hyland. In that call, they demanded that this action be dismissed, and Derrick Sieber threatened Mr. Hyland with a lawsuit and a complaint to Bar Counsel. When these threats proved ineffective, it appears that someone acting for PCS submitted a negative "Client Review" about Mr. Hyland to Martindale-Hubbell ("Martindale").[1]

In an attempt to tie this "Client Review" to PCS, Mr. Seibert sought leave to obtain the submitter IP information from Martindale, and then, the subscriber information from the relevant Internet service provider so this evidence – which directly substantiates Mr. Seibert's claims – may be preserved and used at trial. (ECF No. 10). The Court granted Mr. Seibert's motion by Minute Order dated June 22, 2018, ordering that Mr. Seibert "may issue subpoenas as reasonably necessary to identify the identity of the poster of the review referenced in the motion, prior to the Rule 26(f) conference."

On June 22, 2018, Mr. Seibert issued a subpoena to Martindale's parent company, seeking the IP address and poster account information related to the review. (Exhibit 1). The defendants remained silent. Ultimately, Martindale responded to the subpoena, stating that the poster identified himself as Stevie Marco,

---

[1] It could be worse. Stevie Marco recently swore out a felony warrant in Maryland against a PCS customer with whom PCS was involved in legal proceedings. That case was promptly the subject of a *nolle prosequi* once the State's Attorney's office became involved.

and that the review was posted from IP address 76.114.213.28, on May 24, 2018, at 20:15:54. (Exhibit 2). Research revealed that this IP address was associated with an account with Comcast.

The next step in confirming the actual identity of the poster was to determine the identity of the subscriber from whose Comcast account the post was made. Accordingly, on July 24, 2018, Mr. Seibert issued a subpoena to Comcast, seeking the identity of its subscriber who was assigned IP address 76.114.213.28, on May 24, 2018, at 20:15:54. Then – with the truth about to be revealed – the defendants sprung into action. Stevie Marco apparently requested that Martindale remove the review, feigning ignorance (despite having certified otherwise) that Martindale "client reviews" required certification that the reviewer was in fact a client of the reviewee. He provided a purported admission that he was the actual reviewer. And counsel for the defendants, Mr. Lyle, has admitted that the review was posted from Mr. Lyle's personal Comcast account. [2] Founded solely upon these late "admissions," the defendants claim that the subpoena should be quashed.

Though the subpoena sought merely the subscriber information associated with the IP address at a particular moment in time, the defendants also complained that it sought private "communications." It did not. But to eliminate any doubt and to assuage the defendants' stated concerns, on August 9, 2018, Mr. Seibert's counsel

---

[2] Whether this is cause for Mr. Lyle's disqualification as counsel in this case is left for another day.

sent a letter to Comcast making clear that the subpoena sought only the identity of the subscriber to whom the IP address was assigned at the time the review was posted. (Exhibit 3). The defendants were not assuaged, and filed the Motion.

The Motion assumes, *ab initio*, that the Court and Mr. Seibert must take the defendants at their word, and deny Mr. Seibert the opportunity to test their veracity. In some circumstances, this might be a somewhat reasonable proposition. However, here, the "facts" and "admissions" are founded upon representations of Stevie Marco. And Stevie Marco has repeatedly been found by federal courts to be a vexatious litigant and, to be generous, an unreliable reporter of facts. *See, e.g.*, *Sieber v. Washington Post Cos.*, 2011 WL 2693526, at *2 (D. Md. July 8, 2011) ("Here, the underlying Complaint contains outrageous, unsubstantiated accusations of conspiracy and misconduct arising from the normal administration of a bankruptcy estate. The unwarranted inferences and conclusory allegations contained therein are not based on any facts alleged and amount to nothing more than a lengthy explication of frivolous legal and factual arguments for which Appellants Stephen and Derrick Sieber have previously been warned"); *U.S. Trustee v. Sieber*, 489 B.R. 531, 555-56 (Bankr. D. Md. 2013) (Finding Stephen Sieber's testimony was "not credible" and "[t]he Court further finds that [Stephen Sieber] knowingly and fraudulently made false oaths and accounts"); Order Imposing Sanctions, Adv. Case No. 11-113, May 1, 2012, Dkt. 95, at 5-6 (Bankr. D. Md.) ("Stephen Sieber has filed vexatious and improper pleadings in this Adversary Proceeding and in his main bankruptcy case. He did not have sufficient factual support or legal basis for the allegations contained

in the Complaint") and ("the filing of the Complaint is not an isolated event of wrongdoing by Stephen Sieber and Derrick Sieber. Rather, it is part of a pattern of frivolous and vexatious filings by Stephen and Derrick Sieber in connection with Stephen Sieber's bankruptcy case."). Simply put, Stevie Marco's statements and purported admissions cannot be accepted as factual, because he has a well-documented history of making false statements under oath and otherwise.

## II.   ARGUMENT

### A.   <u>The objective of the subpoena has not been definitively fulfilled.</u>

Defendants first argue that the subpoena is unnecessary because Mr. Seibert "and his counsel now know the identity of the poster of the review because Steven Sieber has admitted making that post. . . and they have no basis or reason to question the admission made by Stephen Sieber." Motion at 4. As detailed above, there is ample basis and reason to question the "admission" by Stephen Sieber. Stephen Sieber is a recidivist liar, as determined by multiple Courts. His statements hold no weight. And, in any event, there can be no conceivable harm in allowing Comcast to respond to the subpoena. If the subpoena response is consistent with Stevie Marco's "admission," then defendants have nothing more to fear (aside from the consequences of the "admission"). On the other hand, if it demonstrates, for instance, that the post was made from PCS's offices or Derrick Sieber's home, then the defendants have a great deal more to fear. But Mr. Seibert is most assuredly not required to simply take Stevie Marco's word for it, particularly given Stevie Marco's history.

B.   **This is not a fishing expedition.**

Defendants next argue, without cogent explanation, that Mr. Seibert has exceeded the scope of what he was permitted by the Court to seek, because he asks for "additional information about all the users of IP 76.114.213.28." Motion at 5. This is inaccurate. The subpoena, by its terms, seeks "the name, address, and other identifying information as to the person or entity using the IP address 76.114.213.28 on May 24, 2018, at EST 20:15:54." That is, it seeks the identity of the Comcast subscriber using a specific IP address at a particular moment in time. It is inconceivable how this can be considered a "fishing trip" or a claim that Mr. Seibert seeks "additional information about all the users of" the IP address. To the extent this was not clear,[3] Mr. Seibert's counsel sent Comcast the August 9, 2018 letter clarifying that the subpoena seeks "only the subscriber identification information associated with the use of the IP address referenced in the subpoena, at the time referenced in the subpoena." (Exhibit 3). Defendants' suggestion that the subpoena is any broader then permitted is entirely baseless.

C.   **The subpoena does not seek, nor will Comcast produce, "communications."**

Lastly, Defendants submit that the document sought will likely contain private communications. They are wrong, and demonstrate an unfamiliarity with how the

---

[3] It would have been clear to Comcast, as the language in the subpoena is the standard language used in subpoenas to internet service providers when a subpoena seeks subscriber information associated with an IP address.

assigned IP identification process works, and an unfamiliarity with the law. First, the request seeks only documents identifying at the subscriber, <u>during a one-second period</u>. It makes no mention of communications; it seeks no communications; and even if it did (and it does not), it would pertain only to those communications made during a single second, on a single day. Courts, including this one, have universally "held that Internet subscribers do not have an expectation of privacy in their subscriber information as they already have conveyed such information to their Internet Service Providers." *West Bay One, Inc. v. Does 1-1,653*, 270 F.R.D. 13, 15 (D.D.C. 2010); *Achte/Neunte Boll Kino Beteiligungs Gmbh v. Does 1-4,577*, 736 F. Supp. 2d 212, 216 (D.D.C. 2010).

But as a matter of law, Comcast could not produce communications in response to the subpoena even if it wanted to, given the prohibitions in the Electronic Communications Privacy Act. *See* 18 U.S.C. § 2702; *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 611 (E.D. Va. 2008) ("a corporation that provides electronic communication services to the public may not divulge the contents of … electronic communications … because the statutory language of the Privacy Act does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas."). Defendants' confusion and stated objection were addressed and discarded plainly and succinctly by another federal court:

> Doe # 469 also asserts a statutory privacy interest, arguing that the subpoena must be quashed because it violates the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701 et seq. To support this assertion, Doe # 469 cites only one case, *In re Subpoena Duces Tecum to AOL,*

*LLC*, 550 F. Supp. 2d 606 (E.D. Va. 2008), which differs significantly from the facts in the present case. The *AOL* case dealt with quashing a subpoena seeking movant's e-mails, not movant's subscriber information. Doe # 469 also cites § 2702(a)(1) of the ECPA, which provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a) (1). While applicable to the e-mail discovery in the *AOL* case, defendant's reliance on this provision to contest the subpoenaed subscriber identification information is misguided. *See Patrick Collins, Inc. v. Does 1–11,* AW–11–01776, 2011 WL 5439045, at *4 (D.Md. Nov.8, 2011) ("[Section 2702(a)(1) ] does not apply in the instant action, where Plaintiff seeks not the contents of a communication in electronic storage but rather Defendants' names, addresses, telephone numbers, e-mail addresses, and Media Access Control addresses."). Doe # 469 presumably meant to rely on § 2702(a)(3), which discusses restrictions on the disclosure of customer records. Yet, while § 2702(a)(3) is more applicable, § 2702(c)(6) provides an exception by which an ISP "may divulge a record or other information pertaining to a subscriber or other customer ... to any person other than a government entity." 18 U.S.C. § 2702(c)(6). Therefore, because plaintiffs are not government entities, disclosure of the subpoenaed identifying information is permitted. *See Patrick Collins,* 2011 WL 5439045, at *4 (finding defendants' claims of statutory privilege under ECPA unavailing and permitting ISPs to disclose identifying subscriber information); *First Time Videos, LLC v. Does 1—500,* 276 F.R.D. 241, 246–47 (N.D.Ill.2011) (same).

*Malibu Media, LLC v. Doe*, 2015 WL 4040409, at *2 (D. Md. June 30, 2015) (quoting

*CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 555 n.5 (D. Md. 2012))

(internal record citations omitted).

Simply put, Defendant's stated privacy fears are not supportable and have no

basis in the language of the subpoena or in the law.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny the

Motion.

Dated:    August 19, 2018.

Respectfully submitted,


By: /s/ Timothy B. Hyland
Timothy B. Hyland
DC Bar No. 988498
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA 20190
(703) 956-3566 (Tel.)
(703) 935-0349 (Fax)
thyland@hylandpllc.com


By: /s/ Michael J. Bramnick
Michael J. Bramnick
DC Bar No. 500756
BRAMNICK LAW, LLC
4250 East West Highway, Suite 700
Bethesda, MD 20814
(310) 547-3647 (Tel.)
mbramnick@bramnicklegal.com

*Counsel for Michael Seibert*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 19, 2018, I caused to be filed electronically the forgoing with the Clerk of Court for the United States District Court for the District of Columbia using the CM/ECF system, which will in turn provide service and an NEF to:

        Edward Lyle, Esquire
        1250 Connecticut Avenue, N.W., Suite 700
        Washington, DC 20036

         /s/ Timothy B. Hyland
        Timothy B. Hyland