# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL SEIBERT, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-818 (RMC) |
| PRECISION CONTRACTING SOLUTIONS, LP, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Michael Seibert seeks a stay of arbitration demanded by Precision Contracting Solutions, LP and its sole owner and partner, Derrick Sieber, arising out of a construction contract dispute. Defendants both oppose the stay and move to dismiss for lack of subject-matter jurisdiction. Defendant Precision Contracting Solutions, LP also moves to dismiss for lack of personal jurisdiction due to insufficient service. Under the Federal Arbitration Act, the Court's authority is distinctly limited. Here, however, Mr. Seibert alleges that the arbitration clause in the construction contract contains illegal and unconscionable terms that render it unenforceable. In such a case, the saving clause of the Federal Arbitration Act "allows courts to refuse to enforce arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018). Because the Court finds that service was made and the arbitration clause is unconscionable and unenforceable, it will enter a stay of the arbitration and any award and will deny Defendants' motions to dismiss.

# I. FACTS

Michael Seibert and Precision Contracting Solutions, LP (PCS), signed a contract on December 8, 2017, by which PCS agreed to make certain upgrades to Mr. Seibert's residential property in Washington, D.C. Compl. [Dkt. 1] ¶ 6; *see also* Ex. 1, Compl., Precision Construction Contract (Contract) [Dkt. 1-1]. Mr. Seibert paid for most of the work but refused to make the last payment because the work was allegedly shoddy, incomplete, and performed without the necessary permits. *See* Compl. ¶¶ 11-15. PCS initiated arbitration to collect the unpaid balance of the Contract under the following clause:

> **Binding Arbitration**: The parties to this contract agree that any and all disputes that cannot be settled in good faith by the parties shall be resolved through binding arbitration that is initiated under the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") within 30 days of such dispute. No legal action may be initiated before the AAA or in any other arbitral or judicial forum against any director, officer, employee or agent of, or anyone else associated with, one of the principals to this contract in connection with any dispute related to this contract. The party's [sic] sole recourse under this contract shall be against each other before the AAA. If the parties do not file a claim with the AAA within the 30-day period stated herein, then all claims are barred from being brought by the parties in any and all legal forums. It is further agreed that the cost of binding arbitration shall be shared equally by PCS and the Client. It shall be clearly understood that any disputes that may arise are confidential with no public comment permitted in any form by either party relating to the dispute. The results of any Arbitration proceeding shall also be confidential with no public comment by either party permitted in any form relating to any award. The parties agree that any breach of this provision shall constitute a willful breach of contract.

Contract at 3. The Contract was signed by Derrick S. Sieber, "Owner, Precision Contracting Solutions," and Mr. Seibert. *See id*. at 4.

Mr. Seibert sued PCS, Derrick Sieber, and Stephen Sieber[1] on April 10, 2018, seeking a declaratory judgment that the arbitration clause is unenforceable and raising claims of fraud in the inducement, reformation, breach of contract, and unlawful trade practices. *See* Compl. ¶¶ 17-43. Mr. Seibert moved to stay the arbitration initiated by PCS on the same day. Mot. to Stay Arbitration [Dkt. 2]; Mem. of P. & A. in Supp. of Mot. to Stay Arbitration (Stay Mem.) [Dkt. 2-1]. Defendants oppose. Opp'n of Defs. to Pl.'s Mot. to Stay [Dkt. 34].

Multiple procedural motions have been filed. The Clerk of Court entered default against PCS after Mr. Seibert filed a motion alleging that PCS had been served and failed timely to answer or otherwise respond. *See* Mot. for Entry of Default as to PCS [Dkt. 8]; Clerk's Entry of Default as to PCS [Dkt. 9]. PCS moves to vacate the Clerk's entry of default and argues it had not been properly served. Mot. to Vacate Clerk's Entry of Default [Dkt. 11].[2] That motion is fully briefed.

Additionally, both Defendants separately moved to dismiss for lack of subject-matter jurisdiction. Mot. of Def. Derrick S. Sieber to Dismiss or Stay this Proceeding for Lack of Subject-Matter Jurisdiction (D. Sieber MTD) [Dkt. 14]; Mot. of Def. PCS to Dismiss this Proceeding for Lack of Subject-Matter Jurisdiction (PCS MTD) [Dkt. 24].[3] Both motions are ripe for review.

---

[1] Stephen Sieber is no longer a defendant as the parties voluntarily dismissed him on May 23, 2018. *See* Notice of Voluntary Dismissal [Dkt. 7].

[2] *See also* Mem. in Opp'n to Mot. of PCS to Vacate the Pending Default Notice (Opp'n to Vacate) [Dkt. 15]; Reply of Def. PCS in Supp. of its Mot. to Vacate [Dkt. 17].

[3] *See also* Mem. in Opp'n to Mot. of Derrick S. Sieber to Dismiss or Stay (Opp'n to D. Sieber MTD) [Dkt. 16]; Reply of Def. Derrick S. Sieber in Supp. of his Mot. to Dismiss or Stay (D. Sieber Reply) [Dkt. 18]; Mem. in Opp'n to Mot. of PCS to Dismiss or Stay [Dkt. 29].

## II. LEGAL STANDARDS

### A. Federal Arbitration Act

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, states the direction of Congress that "federal courts [are] to enforce arbitration agreements according to their terms . . . ." *Epic Sys.*, 138 S. Ct. at 1619. Section 2 of the FAA makes arbitration agreements "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Section 2 also provides a "saving clause [that] allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Epic Sys.*, 138 S. Ct. at 1622 (quoting 9 U.S.C. § 2). The saving clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

The saving clause of Section 2 of the FAA has been given a limited reading by the Supreme Court.

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . . We hold, therefore, that in passing upon [an FAA] § 3 application for a stay [of litigation] while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *see also Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) ("A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'") (quoting *Concepcion*, 563 U.S. at 339).

Because they direct the Court's analysis, the relevant sections of the FAA are quoted in full below:

> § 2: A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
>
> § 3: If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .
>
> § 4: A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration . . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue.
>
> § 9: . . . If no court is specified in the agreement of the parties [to confirm an award], then such application may be made to the United States court in and for the district within which such award was made. . . .
>
> § 16
> (a) An appeal may be taken from –
>   (1) An order –
>     (A) refusing a stay of any action under section 3 of this title,
>     (B) denying a petition under section 4 of this title to order arbitration to proceed,
>     (C) denying an application under section 206 of this title to compel arbitration,
>     (D) confirming or denying confirmation of an award or partial award, or

5

>                    (E) modifying, correcting, or vacating an award;
> . . .
>           (b) Except as otherwise provided . . . , an appeal may not be taken
>                from an interlocutory order –
>                    (1) granting a stay of any action under section 3 of this title;
>                    (2) directing arbitration to proceed under section 4 of this title;
>                    (3) compelling arbitration under section 206 of this title; or
>                    (4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. §§ 2, 3, 4, 9, 16.

The FAA creates a strong presumption in favor of enforcing arbitration agreements and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). However, parties cannot be forced into arbitration to which they have not agreed. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986). Courts have the authority to decide whether the parties are bound by a given arbitration clause. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (holding that, absent the parties' clear agreement otherwise, "a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide") (internal quotation omitted).

**B. Motion to Stay Arbitration**

A motion to compel arbitration pursuant to § 4 of the FAA is evaluated through the summary judgment standard of Federal Rule of Civil Procedure 56, "as if it were a request for 'summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (citations omitted). Although motions to stay arbitration proceedings are not specifically addressed in § 4, the analysis is essentially the same as a motion to compel because the argument that "no agreement to arbitrate was entered . . . effectively raises the issue whether

there was a meeting of the minds on the agreement to arbitrate." *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004), *aff'd*, 413 F.3d 77 (D.C. Cir. 2005); *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration.").

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient admissible evidence such that a reasonable jury could return a verdict for the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The moving party bears the initial burden of showing the absence of a disputed material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether there is a genuine issue of material fact which would preclude summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (citing *Anderson*, 477 U.S. at 255). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment. *Anderson*, 477 U.S. at 252.

C. **Motion to Dismiss – Personal Jurisdiction/Inadequate Service**

Pursuant to Federal Rule of Civil Procedure 12(b)(5), "[i]f the plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint . . . . Upon such a motion, the plaintiff carries the burden of establishing that he has

7

properly effected service." *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). Personal service of process (or waiver of service) is a prerequisite to the Court's exercise of personal jurisdiction over a defendant. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). The requirement is meant to ensure that defendants receive adequate notice of proceedings against them. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002). To satisfy the constitutional requirements, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Actual receipt of notice is constitutionally sufficient, though not required. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). In addition, service of process must satisfy the requirements imposed by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4.

### D. Motion to Dismiss – Subject Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party claiming subject-matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the

8

complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

### III. ANALYSIS

#### A. Jurisdiction and Motion to Vacate Default

The Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1332, as the claim arises between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Mr. Seibert is a citizen of the District of Columbia, and Derrick Sieber, PCS's sole partner, is a citizen of Maryland as is, therefore, PCS. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (finding a limited partnership is a citizen of the state or states of which its partners are citizens). Venue is proper in the District of Columbia because a substantial part of the events at issue occurred in the District because the home under renovation is located in the District. *See* 28 U.S.C. § 1391(b)(2).

PCS challenges this Court's personal jurisdiction over the partnership, arguing that improper service resulted in no personal jurisdiction. Mr. Seibert responds that service was completed by sending a copy of the summons and complaint via certified mail to Edward Lyle, PCS's registered agent, at his home, the registered office for PCS.

PCS is a partnership and must be served as defined in Federal Rule of Civil Procedure 4(h):

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
> (1) in a judicial district of the United States:
>   (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>   (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to

> receive service of process and—if the agent is one
> authorized by statute and the statute so requires—by also
> mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h). Federal Rule of Civil Procedure 4(e)(1) provides that an individual may be served "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). The District of Columbia Superior Court Rule of Civil Procedure for serving a partnership substantially embodies the Federal Rule of Civil Procedure:

> Unless applicable law provides otherwise or the defendant's acknowledgment has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
> (1) in the United States:
>   (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>   (B) by delivering a copy of the summons, complaint, Initial Order, any addendum to that order, and any other order directed by the court to the parties at the time of filing to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and if the agent is one authorized by statute and the statute so requires by also mailing a copy of each to the defendant.

D.C. R. R.C.P. Rule 4(h). District of Columbia Rule 4(c)(4) permits service on any defendant described in Rule 4(h), which includes a partnership like PCS, via registered or certified mail:

> Any defendant described in Rule 4(e), (f), (h), (i), (j)(1), or (j)(3) may be served by mailing a copy of the summons, complaint, Initial Order, any addendum to that order, and any other order directed by the court to the parties at the time of filing to the person to be served by registered or certified mail, return receipt requested . . . .

D.C. R. R.C.P. Rule 4(c)(4). Rule 4 also details how service via registered or certified mail may be proved:

> If service is made by registered or certified mail under Rule 4(c)(4), the return must be accompanied by the signed receipt attached to an affidavit which must specifically state:

> (i) the caption and number of the case;
> (ii) the name and address of the person who posted the registered or certified letter;
> (iii) the fact that the letter contained the summons, complaint, Initial Order, any addendum to that order, and any other order directed by the court to the parties at the time of filing; and
> (iv) if the return receipt does not purport to be signed by the party named in the summons, then specific facts from which the court can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process set out in Rule 4(e) . . . .

D.C. R. R.C.P. Rule 4(l)(1)(B). However, "[f]ailure to prove service does not affect the validity of service. The court may permit proof of service to be amended." D.C. R. R.C.P. Rule 4(l)(3).

Mr. Seibert filed an Affidavit of Service on May 14, 2018, stating under oath that a copy of the summons and complaint had been sent via certified mail on April 27, 2018 and that United States Postal Service records show that the "item was delivered to an individual at the address at 4:53 pm on May 2, 2018." Aff. of Service – PCS [Dkt. 5]. Additionally, counsel for Mr. Seibert received a voicemail from Stephen Sieber on May 3, 2018, which stated that Stephen Sieber accepted service of the summons delivered to Mr. Lyle's address. *See* Opp'n to Vacate at 2-3. Stephen Sieber is an adult living at the residence of Mr. Lyle and has also put himself forward to Mr. Seibert's counsel in the pending arbitration as Mr. Lyle's "co-counsel" for PCS. *Id*.

PCS submitted a declaration from Stephen Sieber in which he states that he believed the copy of the Complaint and summons delivered to PCS at Mr. Lyle's residence was intended for him personally and that when he accepted service via voicemail, he was accepting as an individual. Second Decl. of Stephen Sieber [Dkt. 17-1] ¶ 2. Mr. Sieber further declares that he put the documents aside and did not share them with Mr. Lyle until after default was entered against PCS. *Id.* ¶ 3. Mr. Sieber also denies having any employment or counsel

relationship with PCS, *id.* ¶ 5, which directly contradicts his statement in an email to counsel for Mr. Seibert. *See* Opp'n to Vacate at 2; *see also* Ex. 1, Opp'n to Vacate, Email from Stevie Marco (Stephen Sieber) to Timothy Hyland (S. Sieber Email) [Dkt. 15-1]. The Court accepts statements in briefs submitted for PCS by its counsel Edward Lyle because an officer of the Court is required to address the Court with candor and the Court assumes that Mr. Lyle is abiding by that professional obligation. Mr. Sieber's statements about the delivery of the Complaint and summons—addressed to PCS but which he thought were intended for him personally—were made under penalty of perjury in his declaration. Nonetheless, it is evident from the information before the Court that at some point Mr. Sieber prevaricated. He either failed to speak the truth when he left a voicemail for Mr. Seibert's counsel accepting service *and* when he claimed in a written email that he was co-counsel for PCS, or he has prevaricated in his declaration to this Court, or both. Having no way to determine which statement is a falsehood, the Court finds that service on PCS was proper and attributes Mr. Sieber's confusion about the documents to PCS as good cause for its failure to appear timely. Therefore, the Court has personal jurisdiction over PCS. The Court will grant PCS's motion to vacate default and deny its motion to dismiss for lack of personal jurisdiction.[4]

B. **Motion to Stay**

Mr. Seibert moves to stay the arbitration, arguing that the Contract was procured by fraud because PCS concealed the true identity of Stephen Sieber, who presented himself as

---

[4] The Court also notes that Mr. Seibert filed an Amended Affidavit of Service as to PCS on May 31, 2018 and a Second Amended Affidavit of Service as to PCS on July 9, 2018. *See* Amended Affidavit of Service [Dkt. 13]; Second Amended Affidavit of Service [Dkt. 22]. The First Amended Affidavit explained Stephen Sieber's acceptance of service and the Second Amended Affidavit indicated that Mr. Seibert sent a second copy of the summons and complaint via certified mail to Mr. Lyle, PCS's registered agent, at the address of record and the delivery was refused.

12

Stevie Marco, the PCS professional designer. Because Mr. Seibert was unable to discover Stevie Marco's true identity, he was unaware that he was contracting with Stephen Sieber who "has been adjudicated to have committed fraud and dishonesty in the past," and with whom Mr. Seibert would never have agreed to contract. *See* Stay Mem. at 3. Mr. Seibert also argues that by concealing Stephen Sieber's identity, PCS violated District of Columbia Municipal Regulation, 16 DCMR § 808, which governs the mandatory contents of home improvement contracts and requires parties to include the names and license number of "salespersons who participated in negotiating the contract." 16 DCMR § 808.4.[5] However, under the FAA, the Court can only be concerned now with challenges specific to the enforceability of the arbitration clause. As *Prima Paint* makes clear, general complaints about the terms of the underlying contract do not obviate a written agreement to arbitrate. *See Prima Paint*, 388 U.S. at 403-04.

In addition to his general complaints, Mr. Seibert specifically challenges the arbitration provision itself. He contends: (1) that the 30-day limitations period to seek arbitration is "unreasonable, unenforceable, unconscionable, and void as against public policy" because its "practical effect" would bar Mr. Seibert from proceeding, "thereby destroying mutuality of obligation," Stay Mem. at 6-7; (2) that the bar against bringing actions against PCS partners directly "has the effect of barring any action by Mr. Seibert, and thereby again destroys mutuality of contract," *id*. at 7; and (3) that the confidentiality mandate in the PCS arbitration clause is void and unenforceable under the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45b. *Id*. at 7-8.[6]

---

[5] Mr. Seibert also complains that PCS "failed to obtain required permits to perform the work and intentionally misrepresented this fact." Stay Mem. at 6.

[6] Because it resolves these motions on other grounds, the Court does not address the 30-day limitation on bringing claims against the contractor.

13

> The confidentiality mandate in the contract states:
>
> > It shall be clearly understood that any disputes that may arise are confidential with no public comment permitted in any form by either party relating to the dispute. The results of any Arbitration proceeding shall also be confidential with no public comment by either party permitted in any form relating to any award. The parties agree that any breach of this provision shall constitute a willful breach of contract.

Contract at 3. Arbitration agreements construed under the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Mr. Seibert argues that the confidentiality mandate in the PCS arbitration clause violates public policy as expressed in § 45b(b), which explicitly protects consumers' rights to communicate their opinions on work or services provided under a form contract and that the confidentiality mandate is, therefore, unenforceable. Stay Mem. at 7-8.[7]

Section 45b, upon which Mr. Seibert relies, is a section of the law that established the Federal Trade Commission and prevents unfair methods of competition. Section 45b explicitly protects consumer reviews related to the provision of goods and services when the consumer agrees to a form contract. *See* 15 U.S.C. § 45b(a)(2) (defining "covered communication"). The law defines a form contract as one with "standardized terms" that is "used by a person in the course of selling" his services and "imposed on an individual without meaningful opportunity for such individual to negotiate the standardized terms." *Id.*

---

[7] Mr. Seibert further claims that PCS aggressively threatens to employ the confidentiality provisions against unhappy consumers. Stay Mem. at 7-8; *see also* S. Sieber Email at 2 (warning that "PCS's statement of claims in the AAA matter calls for Mr. Siebert [sic] to pay not only for the extra work he ordered, but also **$200,000** in damages caused by the public filing of the Federal lawsuit . . . . As the damage increases we will amend our claim upwards accordingly.") (emphasis in original); *see also* Opp'n to D. Sieber MTD at 13 (referencing litigation in D.C. Superior Court, *see infra*, in which Derrick Sieber counterclaimed under the confidentiality provision when a client attempted to sue to enforce an arbitration award).

§ 45b(a)(3)(A).[8] Congress has directed that "a provision of a form contract is void from the inception of such contract if such provision (A) prohibits or restricts the ability of an individual who is a party to the form contract to engage in a covered communication [or, as relevant] (B) imposes a penalty or fee against an individual who is a party to the form contract for engaging in a covered communication . . . ." *Id.* § 45b(b)(1). It is "unlawful for a person to offer a form contract containing a provision described as void in subsection (b)." *Id.* § 45b(c).

While § 45b is subject to enforcement by the Federal Trade Commission or the States, no private right of action is suggested. *See id.* § 45b(d) (enforcement by the Commission) and 45b(e) (enforcement by the States). Nonetheless, § 45b speaks clearly to the public policy of the United States. The Court also finds that there is no conflict between § 45b and the FAA since the broad confidentiality condition in the contract under review is neither "fundamental" to arbitration, *Concepcion*, 563 U.S. at 339, nor consistent with the public nature of federal court dockets, except in limited instances which do not apply, should an award need confirmation. *See* LCvR 5.1(h)(1) ("Absent statutory authority, no case or document may be sealed without an order from the Court."); LCvR 5.4(f) (requiring parties to exclude personal identifiers such as Social Security numbers, names of minor children, dates of birth, and financial account numbers from filings with the Court).

It appears that PCS and Derrick Sieber mean every word of the confidentiality provision and it is no small part of the arbitration clause in the contract. Mr. Seibert cites *Toland v. Derrick Sieber, et al.*, D.C. Superior Court, Case No. 16-6458, a suit in which Lamar Toland sought confirmation of an arbitration award against Derrick and Stephen Sieber. PCS responded

---

[8] There is no contention that the clause for binding arbitration in the construction contract at issue here was not form language (as is obvious from its appearance) and presented to Mr. Seibert without individual negotiation.

15

with a counterclaim against Mr. Toland, the Law Firm of Bar-Adon & Vogel which was representing Mr. Toland, and the Law Firm's individual attorneys in a motion to *vacate* the arbitration award for "intentionally violating the confidentially [sic] provision in the contract." Opp'n to D. Sieber MTD at 13; *see also* Ex. C, Opp'n to D. Sieber MTD, D. Sieber *Toland* Counterclaim [Dkt. 16-3] at 37. Because the FAA permits a clause to be voided for any reason in law or in equity, and the relevant facts surrounding the arbitration clause and confidentiality agreement are not in dispute, the Court finds that violation of § 45b provides an equitable and public policy reason to void the arbitration clause in the contract between Mr. Seibert and PCS.

The arbitration clause further bars any legal action against "any director, officer, partner, employee or agent of, or anyone else associated with, one of the principals to this contract." Contract at 3. Mr. Seibert argues that "[t]his sentence purports to, in effect, change PCS to a corporation, and to insulate its partner from liability, even for fraud." Opp'n to D. Sieber MTD at 14. Contrary to the expansive protection of the arbitration clause, Derrick Sieber is a necessary party to any claim against the partnership, such as an effort to confirm an arbitration award. *See Country Club Assocs. Ltd. P'ship v. FDIC*, 918 F. Supp. 429, 438-39 (D.D.C. 1996) ("The settled rule in the District of Columbia is that a partnership is not a jural entity capable of suing or being sued. Therefore, individual partners have been held to be proper and perhaps necessary plaintiffs in any lawsuit brought by a partnership."). Mr. Seibert emphasizes that the arbitration clause attempts to make it impossible for him to bring a valid claim against PCS, including for fraud, because Derrick Sieber would be required by law to be a party to any lawsuit against PCS, but the contract with PCS prohibits suing Mr. Sieber. *See Mero v. City Segway Tours of Washington DC, LLC*, 962 F. Supp. 2d 92, 97 (D.D.C. 2013) (noting that a prospective waiver of tort liability is unenforceable in D.C. unless clearly and

unambiguously stated and only to the extent conduct is not grossly negligent, reckless, or intentional). As with the confidentiality provision, Defendants state that this portion of the arbitration clause is indispensable. *See* Pl.'s Suppl. Info, Aug. 1, 2018 email from Defendants' counsel to AAA [Dkt. 28-1] (stating that "the disputes provision of Mr. Seibert's contract with PCS prohibits any attempt to join in the arbitration any individual associated with either of the parties therein. . . . PCS would not have entered into that contract with Mr. Seibert if that disputes provision and its protections for individual personnel had not been included in the contract"). This provision in the arbitration clause is also undisputed and weighs in favor of its unconscionability.

### C. Motion to Dismiss

Defendants insist that since the contract contains an arbitration provision, the Court is required to dismiss Mr. Seibert's Complaint for lack of subject-matter jurisdiction. However, the arbitration provision in the contract does not divest the Court of subject-matter jurisdiction to determine whether the parties must submit their claims to arbitration. *See Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 146 (D.D.C. 2002). As the above discussion of the FAA, FTCA § 45b, and Mr. Seibert's arguments demonstrates, while arbitration is generally preferred, courts may review the validity of an arbitration agreement. *Epic Sys.*, 138 S. Ct. at 1622 (noting the saving clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability") (citation omitted).

Derrick Sieber advanced numerous additional arguments, which PCS adopted in full. *See* PCS MTD at 4 ("Defendant PCS now adopts all arguments that Derrick Sieber has made in [his] filings and makes them part of this Motion."). Mr. Sieber's additional arguments are that: (1) the parties intended to arbitrate "any and all disputes" and a valid arbitration has been initiated, D. Sieber MTD at 5-6; (2) there is no basis to revoke or reform the contract, *id.* at

17

6-7; (3) once arbitration is underway, questions of arbitrability belong to the arbitrator, D. Sieber Reply at 3-4 (citing *Howsam*, 537 U.S. at 84); (4) the confidentiality provision in the contract would not "prevent [Mr. Seibert] from seeking . . . relief in either this Court or the D.C. Superior Court through a motion to proceed under seal . . . ," *id.* at 6; (5) a "special arbitrator" could be authorized to join Derrick Sieber to the arbitration if needed, *id.* at 6-8; (6) the merits arbitrator could declare the confidentiality provision unenforceable, *id.* at 8; (7) the merits arbitrator could declare the 30-day period for making claims unenforceable, *id.* at 8-9; and (8) the merits arbitrator could order appropriate relief if allegations of fraud, threats, or intimidation were found convincing. *Id.* at 9.

The Court is unpersuaded. It finds, as counsel for Defendants and Defendants' past conduct have made clear, that the confidentiality provision in the arbitration clause was critical to the Contract's acceptance by PCS. However, as enforced by Defendants, such a confidentiality provision interferes with a client's right to challenge its obligation to arbitrate, as here, or to get any arbitral award enforced.[9] Since both of these rights are part and parcel of the FAA §§ 4 and 9, availing oneself of these rights in court does not and cannot interfere with the policy goals of the statute. The attempted protection of "any director, officer, employee or agent of, or anyone else associated with, one of the principals to this contract" interferes with the same client rights under the FAA because Derrick Sieber is a necessary party to actions under §§ 4 or 9.

---

[9] Defendants suggest access to the courts for enforcement of an award can be obtained by filing under seal. But the federal courts are public places. Sealed cases are highly unusual in the federal courts and nothing about a run-of-the-mill arbitration award enforcement would easily receive such treatment.

18

Further, Defendants have misread *Howsam v. Dean Witter Reynolds, Inc.* What the Supreme Court held was that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." 537 U.S. at 84 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-46 (1995)). Thus, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Id*. at 83 (quoting *AT&T Techs.*, 475 U.S. at 649). *Howsam* distinguished "'procedural' questions which grow out of the dispute" which are presumptively for an arbitrator to decide. *Id*. at 84. Inasmuch as Mr. Seibert seeks to benefit from the express provisions of the FAA, his Complaint arises under federal law and asks the most fundamental of questions, that is, is the arbitration clause in the PCS contract enforceable as a matter of law?

## IV. CONCLUSION

The Court concludes, for the reasons stated, that this particular arbitration clause is unconscionable and in violation of federal law. It cannot be enforced. The Court will grant Mr. Seibert's Motion to Stay [Dkt. 2] and order a stay of the arbitration and any award. The Court will also grant PCS's Motion to Vacate Clerk's Entry of Default [Dkt. 11] and deny Defendants' Motions to Dismiss [Dkts. 14 and 24]. A memorializing Order accompanies this Memorandum Opinion.

Date: February 26, 2019

ROSEMARY M. COLLYER
United States District Judge