IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL SEIBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-818-RMC |
| | ) | |
| PRECISION CONTRACTING | ) | |
| SOLUTIONS, LP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO
DEFENDANTS-COUNTERCLAIMANTS' MOTION TO COMPEL
PLAINTIFF TO PERMIT STEPHEN SIEBER TO ATTEND SITE VISIT
TO PLAINITFFS' PROPERTY**

The plaintiff, Michael Seibert ("Mr. Seibert"), submits the following as his memorandum in opposition to defendants Precision Contracting Solutions, LP's ("PCS") and Derrick S. Sieber's ("Derrick") motion to compel Mr. Seibert to allow Stephen Sieber (also known as Stevie Marco) ("Marco") to attend an inspection of Mr. Seibert's property. (ECF No. 55).

**I. INTRODUCTION**

In violation of this Court's Scheduling Order (ECF No. 51), PCS and Derrick have filed this motion to compel.[1] In short, they want to inspect Mr. Seibert's property with Marco in tow. Mr. Seibert has agreed, at every turn, to allow an

---

[1] The Scheduling Order provides "**Counsel shall not file discovery motions without a prior telephone conference with the Court and opposing counsel.**" (Boldface and underscoring in original).

inspection.[2] However, it has also been made clear that Marco is not welcome to attend. This is because (A) Marco is not a party, (B) Marco is not an expert witness, (C) according to PCS, Derrick, and Marco, Marco's employment with PCS was terminated long ago, and (D) Marco has made repeated threats against Mr. Seibert and his counsel. There is no reason that Marco needs to attend the inspection. Indeed, given that his employment with PCS was terminated long before this case was commenced, it is curious why PCS and Derrick (and presumably Marco himself) want him present.

## II. BACKGROUND

On April 25, 2019, counsel for the defendants first requested that Mr. Seibert agree to an inspection of his home. On May 6, counsel for the plaintiff agreed and suggested that the inspection take place on June 11 or 12. It was made clear, however, that Marco would not be permitted to attend. *See Exhibit 1*. The inspection was scheduled for June 11, but on May 31, the defendants canceled the inspection "in light of the question we have about the attendance of [Marco]." *See Exhibit 2*.

Nothing more was heard on the subject until August 22, when defendants' counsel again requested a date and time for an inspection. Mr. Seibert's counsel again agreed to an inspection, provided that Marco would not attend. *See Exhibit 3*. This motion followed.

---

[2] In their Motion, ECF No. 55-1, at 3, the defendants state that Mr. Seibert has refused any inspection. This is not so. They omit earlier and subsequent emails to leave this false impression. See *Exhibits 1 & 3*, attached hereto.

2

### III. MARCO'S HISTORY

The myriad reasons why Marco should not be permitted to attend any inspection are manifest. First, the defendants have represented that his employment with PCS was terminated long ago. *See, e.g., Exhibits 4 & 5*.[3] He is not an expert; he has not been timely designated as one and, in any event, he has been debarred as a licensed contractor. *See Exhibit 7*. In fact, this is just part of his continuing attempt to serve as "counsel" for PCS and Derrick – actions about which he already has been warned by the Committee on Unauthorized Practice of Law of the District of Columbia Court of Appeals. *See Exhibit 8*.

But more to the point, Marco has engaged in a pattern of threats and intended intimidation against Mr. Seibert and his counsel (and other lawyers and parties) since this case began and, indeed, before it began. He has no apparent ability to exercise self-control, and Mr. Seibert understandably does not want Marco in his home. To recount just a subset of Marco's actions:

- Marco submitted a false negative "Client Review" about Mr. Seibert's counsel to Martindale-Hubbell ("Martindale").[4] *See* ECF No. 30.

- Marco has sent threatening emails to Mr. Seibert and his counsel. *See, e.g., Exhibits 9 & 10)* (Ex. 9 - threatening to personally sue counsel and Mr.

---

[3] Despite these contemporaneous representations, in its sworn answers to interrogatories in this case, at Answer No. 21, PCS denies that Marco's employment or engagement with PCS ever was terminated. *See Exhibit 6*.

[4] It could be worse. Marco swore out a felony warrant in Maryland against a PCS customer with whom PCS was involved in legal proceedings. That case was promptly the subject of a *nolle prosequi* once the State's Attorney's office became involved.

3

Seibert for, amongst other things, abuse of process and "sexual harassment"); Ex. 10 – "Do not mistake the above stated claims as frivolous threats, as you are well aware of my litigation history, taking on Google, YouTube, the Washington Post and Angie's List. You should rather consider my promises factual statements that will take place. See you, your firm and Mr. Seibert in Arbitration, or in Court, as I will hang the pelts of you, your firm and Mr. Siebert on my wall as another victory over cheesy and unethical lawyers and … extortionists. Let's get it on!").

- Marco has left threatening emails for Mr. Seibert's counsel. *See* ECF No. 16, at 5 ("Yes, Mr. Hyland, Stephen Sieber speaking. I hope you got my message I sent you, um, from one of the lawyer referral services, but suffice to say you are a very unethical character and I've done some investigation on you and your client and suffice to say, uh very stinky, okay. Um, um, your federal court debogglement [sic] is about to get thrown out back to arbitration then you've got to deal with me, homeboy. Okay, straight up in arbitration. We're filing an arbitration demand for half a million dollars at this point for the damages you've caused for your public disclosure of the lawsuit in violation of the arbitration provision in the contract. I'm filing bar complaints against you, I will not rest until you are disbarred, okay. So grow some hair and lose some weight. Respect.").

- Marco has threatened to file bar complaints against Mr. Seibert's counsel. *See, e.g., Exhibit 9.*

- Marco has repeatedly been found by federal courts to be a vexatious litigant and an unreliable reporter of facts. *See, e.g., Sieber v. Washington Post Cos.*, 2011 WL 2693526, at *2 (D. Md. July 8, 2011) ("Here, the underlying Complaint contains outrageous, unsubstantiated accusations of conspiracy and misconduct arising from the normal administration of a bankruptcy estate. The unwarranted inferences and conclusory allegations contained therein are not based on any facts alleged and amount to nothing more than a lengthy explication of frivolous legal and factual arguments for which Appellants [Marco] and Derrick [] have previously been warned"); *U.S. Trustee v. Sieber*, 489 B.R. 531, 555-56 (Bankr. D. Md. 2013) (Finding Marco's testimony was "not credible" and "[t]he Court further finds that [Marco] knowingly and fraudulently made false oaths and accounts"); Order Imposing Sanctions, Adv. Case No. 11-113, May 1, 2012, Dkt. 95, at 5-6 (Bankr. D. Md.) ("[Marco] has filed vexatious and improper pleadings in this Adversary Proceeding and in his main bankruptcy case. He did not have sufficient factual support or legal basis for the allegations contained in the Complaint") and ("the filing of the Complaint is not an isolated event of wrongdoing by [Marco] and Derrick []. Rather, it is part of a pattern of

frivolous and vexatious filings by [Marco] and Derrick [] in connection with [Marco]'s bankruptcy case."). Simply put, Marco's statements and purported admissions cannot be accepted as factual, because he has a well-documented history of making false statements under oath and otherwise.

- Marco has been adjudicated to have committed fraud and dishonesty in the past, and his former construction business has a history of customer complaints and litigiousness.[5]

- Marco got into an altercation with opposing counsel in a federal courthouse in San Francisco in a different action.[6]

## IV. ARGUMENT

Here there is no dispute as to the fundamental issue: the defendants are entitled to an inspection of Mr. Seibert's property under Fed. R. Civ. P. 34. Mr. Seibert has agreed, each time a request was made, to allow such an inspection. But "[t]he rules are silent as to who may enter the property to fulfill this purpose." *Hillesheim v. RVD Real Estate Props. LLC*, 2019 WL 1900384, at *3 (D. Neb. Apr. 29,

---

[5] *See, e.g.*, Courthouse News, *Judge Calls Claim Against Youtube Pretty Much Falsehoods*, Dec. 20, 2017, at https://www.courthousenews.com/judge-calls-claim-against-youtube-pretty-much-falsehoods/; Washington Post, *Homeowner's Web Gripe Draws Contractor Lawsuit*, Mar. 13, 2007, at http://www.washingtonpost.com/wp-dyn/content/article/2007/03/12/AR2007031201548.html; ABC News, *Contractor and Clients Wage War Online, and In Court*, Sept. 28, 2007, at https://abcnews.go.com/2020/story?id=3664101&page=1; Washington Post, *Home-Improvement Contractor Sued*, Nov. 3, 1990, at https://www.washingtonpost.com/archive/realestate/1990/11/03/home-improvement-contractor-sued/132d5925-312a-4b4e-80a6-650339ba8cea/?noredirect=on&utm_term=.70f2b5c002ca.

[6] San Jose Mercury News, *Google lawyer accused of calling aging 'rock star' a 'scumbag' in courthouse*, Dec. 22, 2016, at https://www.mercurynews.com/2016/12/22/google-lawyer-accused-of-calling-aging-rock-star-a-scumbag-in-courthouse/

2019). While in *Hillesheim*, the Court overruled an objection to a purported (albeit questionable) expert attending the inspection, it noted:

> Here, Defendant objects to allowing Hansmeier on its property. "One of the main rights attaching to property is the right to exclude others." Byrd v. U.S., 138 S. Ct. 1518 (2018). (see also Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982)) ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights"). The parties have not cited, and the court has not found, any authority stating that under the auspices of Rule 34, a defendant must grant access to someone the defendant would otherwise ban from its property.
>
> The court can envision some circumstances supporting good cause to prohibit a specific proposed property inspector from accessing an opposing party's property; for example, if the proposed inspector and the property owner are competitors and the inspector could obtain sensitive business information during the inspection, or if prior to the Rule 34 request, the property owner had banned the proposed inspector from its property due to improper conduct, theft, etc. Under such circumstances, a court could reasonably find that granting access to the proposed inspector would pose a hardship on the owner....

*Id.* at *3-4.

Marco is of the species envisioned by the Court as ones committing "improper conduct." Mr. Seibert does not want Marco in or on his property. It is almost inevitable that Marco's attendance will result in wrongdoing, threats, or Marco making false claims of misconduct by others. His behavior in this regard is not merely sporadic, episodic, or anecdotal – it is his consistent pattern. It is what he does. There is no reason to believe that Marco will properly behave if permitted to attend the inspection.

6

Further, the defendants cannot show any compelling reason why Marco should be permitted to enter into Mr. Seibert's property. He is not an expert witness. He is not a party. He is not an employee of PCS. He is a mere witness. If there is anything he needs to know, the defendants can tell him, or provide him with photographs. Their defense is in no way impaired by Marco's non-attendance at an inspection.

In their motion, the defendants contend that Marco should be allowed to attend because he was "an eyewitness to [the] work" and that he is expected to "testify[] about what he saw before" he left the project at Mr. Seibert's home. ECF 55-1, at 4. But Marco's inspection of the property now has no bearing on these matters. Seeing the condition of the property <u>now</u> can have no bearing on what Marco saw almost two years ago. If he needs refreshment, he may look at photographs. But he should not be allowed into Mr. Seibert's home. He is not welcome. And, as noted above, the result of his attendance will more likely than not be disastrous.

## V. CONCLUSION

For the foregoing reasons, the defendants' motion to compel should be denied; a protective order prohibiting Marco's attendance at any inspection should be entered; and Mr. Seibert should be awarded such other and further relief as the Court deems appropriate.

Dated: September 18, 2019.

Respectfully submitted,


By: /s/ Timothy B. Hyland
Timothy B. Hyland
DC Bar No. 988498
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA 20190
(703) 956-3566 (Tel.)
(703) 935-0349 (Fax)
thyland@hylandpllc.com



By: /s/ Michael J. Bramnick
Michael J. Bramnick
DC Bar No. 500756
Bramnick Law, LLC
4250 East West Highway, Suite 700
Bethesda, MD 20814
(310) 547-3647
mbramnick@bramnicklegal.com

*Counsel for Michael Seibert*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on September 18, 2019, I caused to be filed electronically the forgoing with the Clerk of Court for the United States District Court for the District of Columbia using the CM/ECF system, which will in turn provide service and an NEF to:

   Edward W. Lyle, Esquire
   1250 Connecticut Avenue N.W., Suite 700
   Washington, DC 20036


             /s/ Timothy B. Hyland
             Timothy B. Hyland