UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL SEIBERT, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-818 (RMC) |
| PRECISION CONTRACTING SOLUTIONS, LP, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Michael Seibert and his attorney, Timothy Hyland, move to dismiss counterclaims brought by Precision Contracting Solutions, LP (PCS) and its sole owner and partner, Derrick Sieber, against Messrs. Seibert and Hyland in connection with a construction contract dispute. Mr. Seibert brought several tort and contract claims against PCS and Mr. Sieber concerning a PCS construction project performed on Mr. Seibert's residential property. Defendants answered and counterclaimed, alleging breach of contract and fraud against Mr. Sieber and defamation against Messrs. Seibert and Hyland. Both have moved to dismiss any fraud and defamation counterclaims brought against them. Because the Court finds that Defendants have failed to plead a fraud claim under D.C. law and have conceded their defamation claims, the Court will grant Messrs. Seibert's and Hyland's motions to dismiss.

### I. FACTS

Michael Seibert and PCS signed a contract on December 8, 2017, by which PCS agreed to make certain upgrades to Mr. Seibert's residential property in Washington, D.C. *See*

1

Ex. 1, Compl., Precision Construction Contract (Contract) [Dkt. 1-1].[1] Mr. Seibert paid for most of the work but refused to make the last payment because the work was allegedly shoddy, incomplete, and performed without the necessary permits. PCS initiated arbitration to collect the unpaid balance of the Contract, and Mr. Seibert sued PCS, Derrick Sieber, and Stephen Sieber[2] on April 10, 2018, seeking a declaratory judgment that the arbitration clause is unenforceable and raising claims of fraud in the inducement, reformation, breach of contract, and unlawful trade practices. Mr. Seibert moved to stay the arbitration initiated by PCS and Defendants separately moved to dismiss for lack of subject matter jurisdiction. On February 26, 2019, the Court issued a Memorandum Opinion and Order granting Mr. Seibert's Motion to Stay and denying Defendants' Motions to Dismiss. *See* Mem. Op. [Dkt. 35]; Order [Dkt. 36].

On March 19, 2019, PCS and Mr. Sieber filed their Answer and Counterclaim. The Counterclaim advances three counts: Count I alleges breach of contract against Mr. Seibert; Count II alleges common law fraud against Mr. Seibert; and Count III alleges defamation against Mr. Seibert and Mr. Seibert's counsel, Timothy Hyland. Mr. Seibert filed his Answer to Count I and moved to dismiss Counts II and III on March 26, 2019. *See* Michael Seibert's Corrected Answer to Count I of the Countercl. [Dkt. 42]; Michael Seibert's Partial Mot. to Dismiss the Countercl. [Dkt. 41]. Mr. Hyland moved to dismiss Count III shortly thereafter. *See* Countercl. Def. Timothy Hyland's Mot. to Dismiss the Countercl. [Dkt. 43]. The matter is ripe for review.[3]

---

[1] The Contract was modified by email on January 15, 2018, to extend the completion date and increase the contract amount. Compl. ¶ 6; *see also* Ex. 2, Compl., Email Regarding Contract Modification (Modification) [Dkt. 1-2].

[2] Stephen Sieber (also known as Stevie Marco) is no longer a defendant as the parties voluntarily dismissed him on May 23, 2018. *See* Notice of Voluntary Dismissal [Dkt. 7].

[3] *See* Partial Opp'n of Countercls. Precision Contracting Solutions, LP and Derrick Sieber, Individually, to the Partial Mot. to Dismiss Their Countercl. Filed by Def. Michael Seibert (Partial Opp'n of Countercls.) [Dkt. 44]; Reply Mem. in Supp. of Michael Seibert's Partial Mot.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain sufficient factual information, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff. *Sissel v. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). A court need not accept inferences drawn by a plaintiff if such inferences are not supported by facts set out in the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Further, a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). The same standards govern a motion to dismiss a counterclaim. *Kevin S. Bennett Trust U/A Dated August 2, 1989 v. Bennett*, 561 F. Supp. 2d 22, 26 (D.D.C. 2008).[4]

---

to Dismiss the Countercl. (M. Seibert's Reply) [Dkt. 45]; Resp. of Defs. and Countercl. Pls. Precision Contracting Solutions, LP and Derrick Sieber to the Mot. to Dismiss of Countercl. Def. Timothy B. Hyland (Response to T. Hyland's Mot. to Dismiss) [Dkt. 48]; Countercl. Def. Attorney Timothy Hyland's Reply in Supp. of Mot. to Dismiss the Countercl. (T. Hyland's Reply) [Dkt. 50].

[4] The Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1332, as the claim arises between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Mr. Seibert is a resident of the District of Columbia, and Derrick Sieber, PCS's sole partner, is a citizen of Maryland as is, therefore, PCS. *See Carden v. Arkoma Assos.*, 494 U.S. 185, 195-96 (1990) (finding a limited partnership is a citizen of the state or states of

## III. ANALYSIS

### A. Fraud Claim

The essential elements of common law fraud under District of Columbia law are: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation."[5] *Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1233 (D.C. 2005) (quoting *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002)).

Fraud claims are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud," though "conditions of a person's mind may be alleged generally." *Id.* To satisfy Rule 9(b), a plaintiff must "set[ ] forth in sufficient detail the time, place, and manner" of the alleged fraudulent scheme, so as "to guarantee all defendants sufficient information to allow for preparation of a response." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123 (D.C. Cir. 2015) (internal quotation marks and citation omitted). Such information often includes "specific fraudulent statements, who made the statements, what was said, when or where these statements were made, and how or why the alleged statements were fraudulent." *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015) (citation omitted).

---

which its partners are citizens). Venue is proper in the District of Columbia because a substantial part of the events at issue occurred in the District, as the home under renovation is located in the District. *See* 28 U.S.C. § 1391(b)(2).

[5] The parties do not dispute that D.C. substantive law governs this case. *Cf. TargetSmart Holdings, LLC v. GHP Advisors, LLC*, No. 19-312 (RMC), 2019 WL 4540543, at *8-11 (D.D.C. Sept. 19, 2019) (discussing choice of law for tort claims brought in a diversity case in D.C.).

Further, "[u]nder D.C. law, for a plaintiff to recover in tort for conduct that also constitutes a breach of contract, 'the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship.'" *Attias v. Carefirst, Inc.*, 365 F. Supp. 3d 1, 18 (D.D.C. 2019) (quoting *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008)). "[T]he injury to the plaintiff must be an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit." *Choharis*, 961 A.2d at 1089 (internal quotation marks omitted). Therefore, the viability of Defendants' fraud counterclaim depends on whether Defendants have plausibly alleged sufficient facts that Plaintiff owed them an independent duty beyond the parties' contractual obligations.

Defendants' fraud claim is based on allegations that, "[i]n consummating the Contract [between PCS and Plaintiff], Plaintiff represented to [Defendants that] Plaintiff bore full responsibility for obtaining all required permits for PCS's work under the Contract." Countercl. ¶ 8. Defendants note that neither the December 2017 Contract nor its January 2018 Modification addressed the issue of permitting; rather, Defendants claim that Plaintiff orally committed to obtain permits.[6] Defendants assert that Plaintiff "had no intention of obtaining the required permits," *id.* ¶ 39, and "never obtained the required permits" as promised. *Id.* ¶ 12.

Defendants further allege that in early 2018, a PCS construction superintendent observed a D.C. Department of Consumer and Regulatory Affairs (DCRA) vehicle "stopped in front of Plaintiff's domicile." *Id.* ¶ 14. Defendants claim that the PCS superintendent informed

---

[6] Defendants allege that Plaintiff made this representation "[i]n consummating the Contract." *Id.* ¶ 8. In the briefing on this matter, Defendants add that Plaintiff "made the representation in question . . . at the time when he was signing the Contract in the presence of [Derrick Sieber] and Stephen Sieber." Partial Opp'n of Countercls. at 2.

5

Plaintiff that the construction required a permit, and Plaintiff asked PCS "to obtain a permit as soon as possible on Plaintiff's behalf" and at Plaintiff's expense. *Id.* ¶¶ 15, 45. Defendants allege that PCS acquired the construction permits at a cost of $520.44 but Plaintiff never repaid PCS as promised.

Defendants assert that Plaintiff's representation that he would obtain construction permits "was consistent with the responsibility that D.C. municipal regulations assign to the homeowner for obtaining all required permits prior to residential construction." *Id.* ¶ 38. In support, Defendants cite Title 12A of the D.C. Municipal Regulations (DCMR), Section 105, which governs permits. Section 105.3 states as follows:

> **Application for Permit.** To obtain a permit, the owner or the authorized agent (herein referred to as the applicant) shall submit to the code official an application for permit. Where a permit is required, it shall be obtained by applicant prior to the commencement of any work, except as provided in Section 105.1.8. For trade permits, the applicant shall be the contractor responsible for the work to be done.

12A DCMR § 105.3 (2017) (emphasis omitted).[7] Defendants argue that "[s]ince the construction contract between PCS and Seibert did not designate PCS as Seibert's 'authorized agent' for purposes of obtaining the requisite permits . . . , Seibert himself was required to apply for and obtain the permits in question." Partial Opp'n of Countercls. at 3 n.8 (citing Contract).

Plaintiff relies, instead, on a D.C. regulation that appears to put the responsibility for getting permits squarely on the shoulders of Defendants, working for Mr. Seibert as a "home improvement contractor." Title 16 of the DCMR, Section 812.1, states that:

---

[7] This above analysis may be superfluous since Defendants cite Title 12A, Section 105.3, in their Partial Opposition but the Counterclaim actually references Section 105.1.3, which speaks to "After Hours Permits." 12A DCMR § 105.1.3 is nowhere mentioned in Defendants' brief.

6

> Each home improvement contractor entering into a contract for the performance of any home improvement work for which a permit is required by applicable law of the District of Columbia shall be responsible for taking such action as may be necessary to ensure that the work is performed only under the authority of the required permit and in accordance with all of its terms.

16 DCMR § 812.1. This regulation assigns contractors who perform home improvements the responsibility for ensuring that the work they perform is conducted under the authority of required permits. The Court does not opine on why D.C. has these two regulations, but it finds that the D.C. regulation cited by Defendants does not impose an unqualified duty on homeowners and is not "controlling" on the issue as Defendants suggest. If anything, the specificity of 16 DCMR § 812.1 might override the more general regulation cited by Defendants.

Defendants' historical account of the contract execution and their reliance on the absence of language within the Contract indicate that "the duty of which [Defendants] essentially complain[ ]"—the duty to obtain required construction permits— "necessarily arose from the[ir] contractual relationship" with Plaintiff. *See Nugent v. Unum Life Ins. Co. of Am.*, 752 F. Supp. 2d 46, 54 (D.D.C. 2010). Defendants do not identify, much less allege, an independent tort; they combine the *absence* of language in the written agreements and an inapplicable D.C. regulation to assert that Plaintiff had a duty to obtain permits. Because Defendants assert that any such duty arose only from the parties' respective contractual obligations—whether in writing or made orally at the time of contracting—the Court will dismiss Count II of Defendants' Counterclaim without needing to address whether Defendants have adequately plead the other elements of fraud.

### B. Defamation Claim

In the briefing on this matter, PCS and Mr. Sieber have indicated their intention to withdraw their defamation counterclaim against Mr. Seibert and Mr. Hyland. *See* Partial Opp'n

7

of Countercls. at 5 ("Counterclaimants hereby withdraw Count III (Defamation) of their Counterclaim [against Mr. Seibert.]"); Response to T. Hyland Mot. to Dismiss at 2 ("Counterclaim Plaintiffs now wish to decline the pursuit of [Count III] against Mr. Hyland in this forum"). Defendants do not address any of the arguments presented in Messrs. Seibert's or Hyland's motions to dismiss the defamation count. Defendants have therefore conceded these motions. *See Hopkins v. Women's Div.*, *Gen. Bd. Of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). Therefore, the Court will grant both Mr. Seibert's and Mr. Hyland's motions to dismiss the defamation count.[8] Because defamation is the only claim brought against Mr. Hyland, the case against Mr. Hyland will be dismissed in its entirety.

---

[8] On April 18, 2019, Defendants filed a motion to modify their partial opposition to Mr. Seibert's motion to dismiss the defamation count. Mot. of Defs. and Countercl. Pls. Precision Contracting Solutions, LP and Derrick Sieber, Individually, to Modify their Resp. to the Mot. to Dismiss of Pl. and Countercl. Def. Michael Seibert [Dkt. 47]. Defendants seek to modify their partial opposition to clearly state that they "consent[ ]" to Mr. Seibert's motion to dismiss the defamation count. Because Mr. Seibert's motion to dismiss will be granted, Defendants' motion to modify their response will be denied as moot.

## IV.  CONCLUSION

For the reasons stated, Plaintiff Michael Seibert's Partial Motion to Dismiss Counterclaim, Dkt. 41, will be granted, and Counterclaim Defendant Timothy Hyland's Motion to Dismiss, Dkt. 43, will be granted.  Defendants' Motion to Modify, Dkt. 47, will be denied as moot.  A separate Order accompanies this Memorandum Opinion.


Date: November 8, 2019

ROSEMARY M. COLLYER
United States District Judge